## M. O. H. OF WEST INDIES, Inc., v. CHRISTOFFER HANNEVIG, Inc.

(Circuit Court of Appeals, Second Circuit. February 18, 1919.)

### No. 159.

1. Shipping ⬀179—Exception in charter of "extraordinary occurrence beyond control of either party."

Detention of a vessel under charter in a San Domingo port, after she was loaded within the lay days allowed and ready to proceed, by refusal of the United States authorities in charge of Dominican customs to grant clearance, *held* within a mutual exception in the charter party of "any extraordinary occurrence beyond the control of either party," and not to render charterer liable for demurrage.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Extraordinary Occurrence.]

2. Shipping ⬀61—Duty of clearing chartered vessel on master.

The duty of clearing a vessel, under a charter which is not a demise, rests on the master, and not the charterer, although port charges are for his account.

3. Shipping ⬀179—Charterer not liable for demurrage caused by vis major.

Even under a charter party without exceptions, the charterer is excused from liability for demurrage for delay caused by vis major and extraordinary occurrences beyond his control.

In Error to the District Court of the United States for the Southern District of New York.

⬀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action at law by Christoffer Hannevig, Incorporated, against M. O. H. of West Indies, Incorporated. Judgment for plaintiff, and defendant brings error. Reversed.

Rhinelander, Seymour & Barnard, of New York City (Edward N. Perkins, of New York City, of counsel), for plaintiff in error.

Bullowa & Bullowa, of New York City (Horace L. Cheyney, of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is a writ of error to a judgment directed by the court in favor of Hannevig, Incorporated, owners of the steamer Pusey Jones No. 4, for demurrage against the M. O. H. Company, charterer. The charter was for a cargo of logwood from Manzanillo Bay, San Domingo, to Chester, Pa., the vessel to enter and clear at Monte Christi. There was no demise of the vessel; the owners remaining in exclusive control.

[1] The material articles of the charter party are as follows:

"2. * * * Haytien port charges to be for charterer's account, payable in U. S. gold coin or its equivalent, free of discount or commission, upon right and proper delivery of cargo at port of discharge.

"3. The act of God, restraint of princes and rulers, the country's enemies, fire and all and every other dangers and accidents of the seas, rivers, and steam navigation, of what nature and kind soever, during the said voyage, riots, strikes, fire, floods, or any extraordinary occurrence beyond the control of either party, always mutually excepted.

"4. It is agreed that the lay days for loading and discharging shall be as follows, commencing from the time the captain reports his steamer ready to receive or discharge cargo: For loading, six (6) days, Sundays and legal holidays excepted. For discharging, customary dispatch.

"5. Also, that for each and every day's detention by default of said party of the second part, or agent, three hundred dollars ($300.00) per day, day by day, shall be paid by the said party of the second part, or agent, to the said party of the first part, or agent."

The complaint alleges that the vessel was detained by default of the charterer at San Domingo for 15 days over the lay days allowed for loading.

The amended answer admitted the delay and alleged for a first defense that the vessel, although loaded and ready to clear within the lay days, was refused clearance by the United States authorities in charge of the customs and of all entries into and clearances from Monte Christi, which was an extraordinary occurrence beyond the control of the defendant, within the exception of the charter party. For a second defense, the answer set up the same facts as a restraint of princes, within the exception of the charter party.

The reply denied that the vessel was detained by the authorities of the United States at Monte Christi, as alleged in the first defense, and, admitting the allegation of the second defense, that the authorities of the government of the United States present in San Domingo detained said vessel and were able so to do, denied knowledge and information sufficient to form a belief as to the truth of the allegation that it was impossible for the vessel to clear or depart by reason of the compulsion of said naval authorities, or that the vessel was

able and ready to clear, and would have cleared and departed, had not said naval authorities intervened as aforesaid.

The business of the vessel at Monte Christi was attended to by the charterer's agents, and the Haytien port charges were by the charter party for charterer's account. Nevertheless the charterer's agents, in paying the stevedores' charges and advancing cash for ship's expenses and getting clearance of the vessel, were acting for account of the owners.

The court having denied the defendant's motion to dismiss the complaint, the defendant read the deposition of members of the firm who were charterer's agents at Monte Christi, testifying that the vessel was loaded and ready to clear within the lay days, that she was denied clearance by the United States authorities for the period for which demurrage was claimed, and did clear as soon as the master notified them that the restraint was removed and asked them to get clearance.

We take judicial notice of the fact that under a convention between the United States and the Dominican Republic, proclaimed by the President, July 25, 1907, 38 S. L. P. II, p. 1880, the United States was at this time in full and exclusive charge of the Dominican customs. Refusal of clearance of the vessel at Monte Christi by the United States authorities was a restraint of the government of the United States upon the vessel and her owners.

The trial judge felt controlled by Northern Pacific Railway Co. v. American Trading Co., 195 U. S. 439, 25 Sup. Ct. 84, 49 L. Ed. 269. In it the railway company had agreed to transport certain lead from Newark, N. J., to Tacoma, and thence on a steamer sailing October 30th for Japan. The lead was loaded on the steamer, but, the subcollector refusing clearance on the insufficient ground that lead was contraband during the war between China and Japan, the vessel discharged the lead, got clearance, and proceeded on her voyage. Within half an hour after the vessel had sailed the collector, who had been communicated with, telegraphed the subcollector not to withhold clearance. The court held that the subcollector's act was not a sufficient excuse for the railway's absolute contract to carry the lead on the steamer, and would not have been an excuse, if it had been carried under a bill of lading containing an exception of restraint of princes.

[2] The difference is that in the present case the defendant had completed its contract to load the vessel in time. It had nothing further to do. The duty of clearing lay upon the master, and, whether the order of detention was legal or illegal, it concerned the vessel and her owners, and not the charterers. The presumption, however, is that the order was legal. It was given by the United States authorities in charge, not by a subordinate, and it has never been repudiated by the government.

But, even if the charterers are to be treated as concerned with this delay, they were excused by the exemptions in the bill of lading. It fell plainly within the exception of restraint of princes and of an extraordinary occurrence not within their control. Having brought themselves within the exception, the burden lay, not upon them, as

the District Judge held, but upon the plaintiff, to prove, if it could, that the defendant was so at fault in connection with the refusal of clearance as to be deprived of the benefit of the exceptions. Transportation Co. v. Downer, 11 Wall. 129, 20 L. Ed. 160; Lamb v. Camden & Amboy R. R. Co., 46 N. Y. 271, 7 Am. Rep. 327. There was no such evidence, although the plaintiff made such a charge in its reply.

[3] Finally, if there had been no exception whatever in the bill of lading, the defendant would have been relieved of liability on the ground of vis major. It is true that the expression delay "by default" of a charterer means generally a failure to pay demurrage day by day in accordance with the contract. The charterer is at the risk of all causes of delay which ordinarily occur, although they are not due to his fault; e. g., crowded docks, bad weather, strikes, etc. Nevertheless he is excused by vis major and extraordinary occurrences beyond his control. The Supreme Court so held in Crossman v. Burrill, 179 U. S. 100, 21 Sup. Ct. 38, 45 L. Ed. 106, under a charter party containing a demurrage clause exactly like the one in the instant case; the charter party apparently containing no exceptions. Mr. Justice Gray said:

"In the case at bar, the defense of vis major, as pleaded in the answer, was that the shipowners were prevented from discharging the cargo, and the charterers were prevented from receiving it, any sooner than they did, by reason of acts of the public enemy, to wit, certain vessels of war, then in the harbor of Rio Janeiro, were engaged in firing upon the forts in the harbor and in making war upon the government of Brazil; that the firing between those vessels and those forts made it impossible to discharge or to receive the cargo from the vessel any sooner than it was discharged or received; and that the detention alleged in the libel was caused by those acts of the public enemy, and not by any default of the charterers. The vis major, so pleaded, was, in the words of opinions above cited, a 'superior force, acting directly upon the discharge of the cargo,' 'a direct and immediate vis major,' an 'unusual and extraordinary interruption that could not have been anticipated when the contract was made,' 'a sudden and unforeseen interruption or prevention of the act itself of loading or discharging, not occurring through the connivance or fault of the charterers,' and an 'interference on the part of an armed force, preventing the handling or moving of the cargo.' Upon principle, and according to the general current of authority, the detention alleged was not caused by default of the charterers, and did not render them responsible for demurrage, under this charter party."

The court erred in directing a verdict for the plaintiff.
The judgment is reversed.