## J. ARON & CO., Inc., v. LUCKENBACH S. S. CO., Inc.

### (District Court, S. D. New York. April 7, 1919.)

1. Shipping ⬅105—No express obligation to deliver at any particular time, when time not fixed by contract.

   Where a shipping contract fixed no time for delivery by the shipper, and only fixed the sailing date somewhat indefinitely, there was no express obligation on shipper to deliver at any given time.

2. Shipping ⬅105—Carrier could fix time for delivery, but only by reference to time of sailing.

   Under shipping contract, not fixing time for delivery by shipper, but providing for sailing in middle or late October, carrier had right to fix time for delivery, but only in relation to the date of sailing, and where the time was fixed on the assumption that the steamer would sail November 1st, and it did not sail on that date, it could not reject the cargo, because not delivered on the dates fixed.

3. Shipping ⬅105—When contract not repudiated because of delay in sailing, right to fix time for delivery remains.

   Where shipper did not repudiate shipping contract, providing for sailing in middle or late October, because of delay in sailing, the contract remained, and the carrier retained its right to fix the time of delivery with reference to the time of actual sailing.

4. Shipping ⬅141(1)—Carrier held to have waived rights to exception as to delay from war.

   Where, under shipping contract providing against liabilities for delay resulting from war, carrier, notwithstanding seizure of one of its steamers and torpedoing of another, gave a permit for loading on another steamer, it waived its right to refuse the cargo on that ground.

5. Shipping ⬅141(1)—Requisition of steamers, with reservation to owner of right to continue use, did not excuse compliance with contract.

   Under shipping contract providing against liability for loss or delay resulting from war, the requisition of the carrier's steamers by the Shipping Board did not authorize refusal to take cargo, where it was accompanied with an express reservation to the owner of the use of the ship until specific demand was made.

In Admiralty. Libel in personam by J. Aron & Co., Inc., against the Luckenbach Steamship Company, Inc. Interlocutory decree for libelant.

This case comes up for final hearing on a libel in personam for breach of a freight contract by the carrier under the following circumstances:

On September 24, 1917, the parties signed a contract as follows: "Engaged for account of J. Aron & Co., Inc., shipment by ———, sailing middle and late October, 1917, from New York for Havre, France, Luckenbach Steamship Co., Inc., agents, 10,000 cases milk, salmon, and canned goods at $5 net per 100 pounds, subject to government regulations." The contract also provided that if the steamer should not pass Sandy Hook at 6 p. m. of the expected sailing date or should arrive so disabled as to prevent her sailing within 10 days after her expected sailing date, the shippers might cancel the contract. It was also made "further conditional upon the continuance of the steamship company's service and the sailing of its steamers. Carrier shall not be liable for any loss, damage, or delay resulting directly or indirectly from war or hostilities between any powers."

On October 26th the respondents sent to the libelants a permit addressed to their receiving clerk in Brooklyn as follows: "Received from J. Aron & Co. for Steamship Pleiades scheduled to sale about November 1st for Havre to be

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

delivered *October* 29, 30, 31, 10,000 cases canned milk." This was the first designation of the ship that was to lift the cargo or the time when she was to sail. Owing to a delay for which the libelants were not personally responsible, none of the 10,000 cases were delivered on the 31st of October during working hours. The libelants delivered 4,000 cases on the early morning of November 1st, which were rejected. They subsequently delivered the remainder on November 5th and November 7th, of which part were accepted and part rejected. The respondents' excuse for the refusal was that the delivery had not been made within the time fixed by the permit and that they had been disappointed in some of their sailings. The steamer Pleiades entered the port of New York on November 3d in such condition that she was obliged to go to dry dock and was unable to sail until November 16th.

The respondents' fleet had in fact met with misfortunes which seriously crippled them. Early in October the J. L. Luckenbach had been shelled by a U-boat and was delayed for repairs. The Frederick Luckenbach had been in collision at the end of September, and was later seized by Gen. Pershing. The D. M. Luckenbach was torpedoed toward the end of October, 1917, and it does not appear when news of her destruction reached the respondent. Both the Pleiades and the Harry Luckenbach were subject to the general requisition of the United States Shipping Board, but had not actually been seized. The Harry Luckenbach had sailed in September, and had shut out some of the cargo on the pier, and the respondent had expected to use the Pleiades and the Frederick Luckenbach to lift the cargo which it had left.

Cletus Keating, of New York City, for libelant.
Peter S. Carter, of New York City, for respondent.

LEARNED HAND, District Judge (after stating the facts as above). [1, 2] The contract between the parties fixed no time for delivery at all; only the date of sailing, and that somewhat indefinitely. There was therefore no express obligation upon the libelant to deliver at any given time. Now such a contract for its execution necessarily presupposed some further action by the parties, and they acted in accordance with that assumption. In the permit the respondent fixed the sailing day as November 1st, and the time of delivery as October 29th, 30th and 31st. This they no doubt had the right to do by implication from the substance of the contract. They had the implied right to require delivery reasonably in advance of the day of sailing, so that they might stow the cargo economically and speedily. The libelants recognized this right and endeavored to adapt themselves to it. There being no date of delivery fixed in the contract, the respondents' right to fix it, however, arose only from their reasonable necessities, which means that they could not unconditionally fix it at all, but only in relation to the date of sailing.

[3] When, therefore, they did fix it upon the assumption that the sailing was to be on November 1st, they got the right to shut out the cargo only in case the ship sailed on November 1st; but they may not make their own mistake the basis of an absolute undertaking by the libelants, when no such undertaking was in the contract. It was the respondents, not the libelants, who were at fault, for they agreed to lift the cargo in October. The libelants did not choose to repudiate because of that default, and they were not obliged to do so. As they did not, the contract remained, and the respondents retained their right to fix the time of delivery with reference to the time of actual sailing, but nothing more. Since the libelants tendered the cargo in ample season,

and, indeed, since some of it was accepted, the excuse of delay in delivery is certainly untenable.

[4] There remains, therefore, only the question whether the respondents' refusal was exercised "directly or indirectly from war or hostilities." It is no doubt true that the respondents might have shut out the cargo under that clause, if their engagements had committed them to more than their remaining fleet in fact could lift. The seizure by Gen. Pershing of the Frederick Luckenbach and the shelling of the J. L. Luckenbach were certainly within their rights so reserved. The difficulty with their exercise of that right is that, with these facts before them, they issued the permit which committed the Pleiades to the libelants' cargo. They had no right thereafter to resort to the excuse which they had thus waived, and to shut out what they had accepted.

[5] The so-called requisition of the Harry Luckenbach and the Pleiades is not to the point; it was no more than the declaration of the general powers of the Shipping Board to seize ships when they needed them, and was accompanied with an express reservation to the owners of the use of the ships until some specific demand was made. The loss of the D. M. Luckenbach did not play any part in their determination, as their letter of November 9th shows. This excuse failed, therefore, because it was waived by the issuance of the permit.

As both defenses are invalid, the libelants are entitled to the usual interlocutory decree.