### VACUUM OIL CO. v. LUCKENBACH S. S. CO., Inc., et al.

(District Court, E. D. Virginia. November 1, 1921.)

**Shipping ⬅141 (1)—Commandeered ship relieved from carrying out contract.**

Owner of ships were relieved of their obligations under contracts of affreightment, providing that carrier should not be liable for loss occasioned by restraint of princes, etc., where they were commandeered by the government in time of war.

In Admiralty. Libel in personam by the Vacuum Oil Company against the Luckenbach Steam Ship Company, Incorporated, and another. Decree for respondents.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Barry, Wainwright, Thacher & Symmers, of New York City, and Baird, White & Lanning, of Norfolk, Va., for libelant.

Carter & Carter, of New York City, and Harry E. McCoy, of Norfolk, Va., for respondents.

WADDILL, Circuit Judge. This is a libel in personam to recover for loss arising from the breach of three certain contracts of affreightment, entered into between the libelant and the respondent, on the 24th of September, 1916, the contracts briefly being that respondent would furnish freight room and transport for the libelant 300,000 cases of refined petroleum, naphthas, and/or turpentine, from New York to certain named ports in Australia and New Zealand, at the price of $1 per case, with the right of the shipowner to call for 10 per cent. additional. These contracts contemplated the loading of the 300,000 cases as follows: 100,000 during the month of January, 1917; 100,000 during February; and 100,000 during March. The libelant claims that the respondent failed to transport 140,162 cases, which necessitated its paying an advanced freight rate of 46 cents per case, to wit, $64,474.52, for the recovery of which amount this libel was filed.

During the running of the contracts, as shown by libelant's letter of January 16, 1917, and respondent's reply of the 24th, an agreement for certain extensions of the time limits of the contracts was made, naming the vessels to carry the oil, and the approximate date of shipment; that is to say, on February 25th the steamship Julia Luckenbach was to take on board 150,000 cases; early in May, the steamship Edward Luckenbach was to take 86,137 cases; and in June the steamship Florence Luckenbach was to take 86,138 cases. Pursuant to such extension, the Julia Luckenbach sailed for Australia about the 25th of February, 1917, carrying 127,117 cases, and subsequently the steamship Edgar F. Luckenbach carried 44,635 cases, and the steamship Austral Plane carried 3,565 cases, making a total of 177,117 for the three vessels. The cargo to be transported early in May, of 86,137 cases, was not carried, nor was that of the like shipment in June; the respondent's claim being that both the steamships Edward and Florence Luckenbach were commandeered by the United States government, as contemplated by the excepting clauses of the contracts of affreightment entered into between the parties, and that the Julia Luckenbach, while on her February voyage to Australia, was also commandeered and taken possession of by the government on her return to this country.

The libelant, on the other hand, insists that under the terms of the contract entered into by the libelant, as well as the modification or extension thereof by the letters of the 16th and 24th of January, above referred to, the defense of "restraint of princes" cannot and should not avail the respondent as to any of the vessels, and in any event that respondent is liable for the failure of the Julia Luckenbach to carry in the month of February only 127,117 cases, a shortage of 22,883 cases, on the 150,000 case shipment. These defenses will be considered in the order named:

First. Can the defense of restraint of princes be interposed? The original contract of the 24th of September, 1916, contains these clauses:

"This contract shall be subject to the maritime rules of the New York Produce Exchange. * * *"

Subdivision 2 of rule 8 of said rules reads:

"It is also mutually agreed that the carrier shall not be liable for loss or damage occasioned by causes beyond his control * * * wheresoever occurring * * * by arrest and restraint of princes, rulers or people."

The original contract also contained this limitation:

"This contract is subject to all the terms and conditions of the line bill of lading"

—referring to the bill of lading of the Luckenbach Steamship Company.

The bill of lading issued by the company, under the head of "Causes for Which Carrier should Not be Liable," in section 20, reads:

"* * * Any loss or damage arising from any of the foregoing causes, namely, * * * restraints of government."

Section 36:

"When loading transport * * * or delivery is prevented in consequence of * * * war."

The conclusion of the court is that the clauses above quoted, embodied in and made part of the agreement between the parties, can have but one meaning, viz. that where the carrying out of the contract was frustrated and prevented by causes beyond the control of the shipowner, or by war, or by restraint of the government in its governmental authority in connection with war, such shipowner was excused from carrying out the contract, and exempted from liability arising as a consequence thereof. These provisions were in general use and acceptation in contracts of affreightment, and during the life of this contract were of vital importance to the shipping world, as all maritime undertakings necessarily had to be subordinated to the demands of the country in which such contracts were made.

Secondly. Considering the three ships and their cargoes in the order named; that is, the Florence Luckenbach for June, the Edward Luckenbach for May, and the Julia Luckenbach for February: The Florence Luckenbach was to have taken 86,138 cases in June. She was commandeered on the 21st of that month, and required to be delivered to the government on the 22d of the same month in the port of New York. This prevented her from carrying her allotment of cargo within the time she was required to take the same, in the month of June.

The Edward Luckenbach was to have taken 86,137 cases early in May. These are the circumstances in which this ship was placed: At the time of the extension agreement of the 16th and 24th of January, 1917, she was in Australian waters, having left this country on December 24, 1916, and in due course was en route to this country, calling at the ports named in the contract for freight, to take this

cargo, of which return the libelant had notice. She did not reach Philadelphia until the 25th of May, 1917, and her final port of destination, New York, until June 1, 1917, where, on the 4th of June, she was commandeered by the government. This action of the government, in seizing the vessel as stated, in the court's view relieved her owner from liability for her failure to carry the cargo.

The last case is that of the Julia Luckenbach, which sailed under the extension contract on the 25th of February, 1917, carrying 127,117 cases. While she was abroad on the voyage, notice of her commandeering by the government was given, and immediately upon her return to this country she was taken by the government, as, indeed, was all of the floating property of the respondent company. This action relieved the Julia Luckenbach from liability, upon her return to this country, for the balance of the 150,000 cases she was to have carried.

The libelant insists, however, that respondents are liable for their original failure to take the entire shipment of 150,000 cases, and instead carried 127,117, and that her commandeering should not serve to release her from her breach of contract at that time. There is force in this contention. The same depends, however, not upon the right to claim exemption as a result of the taking of the vessel by the government, but upon the facts as to why she failed to carry the cargo at the time. This question of fact is not entirely clear from the record; still the court is convinced, from a careful examination of the letter of the 19th of January from the respondent to the libelant, and the reply of the latter to the former on the 21st, that what was done in connection with carrying the reduced quantity was for the accommodation of the libelant, and because of its failure and inability then to furnish the full cargo.

It follows from what has been said that the libelant is not entitled to recover, and a decree may be accordingly entered, dismissing the libel.