## SOCIÉTÉ ANONYME DES SUCRERIES DE SAINT JEAN v. BULL INSULAR LINE, Inc.*

(Circuit Court of Appeals, First Circuit.   November 29, 1921.)

No. 1513.

1. **Shipping ☞108—Facts held not to relieve party from performance.**

Under a contract for the transportation from San Juan to New York of plaintiff's output of sugar for a term of five years, at an agreed freight, by defendant, by its own steamers or by steamers chartered by it, defendant *held* not relieved from performance by the fact alone that its own steamers were requisitioned by the government for war purposes.

2. **Shipping ☞108—Contract held not frustrated by temporary inability to perform.**

A contract made in 1916 by defendant to carry plaintiff's output of sugar from Porto Rico to New York for a term of five years, beginning in 1917, provided that, "if by reasons of force majeure either of the parties are unable to carry out this agreement in whole or in part, such inability by either party will not subject such party to any claims for damages, nor will such inability void this agreement." In 1917 defendant's vessels were requisitioned by the government for war purposes and were held for about two years, when they were returned. *Held*, that such temporary inability to perform did not terminate the contract nor relieve defendant from the obligation to perform it during the remainder of the term.

In Error to the District Court of the United States for the District of Porto Rico; Peter J. Hamilton, Judge.

Action at law by Société Anonyme des Sucreries de Saint Jean against the Bull Insular Line, Inc. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Philip N. Jones, of Boston, Mass. (Boyd B. Jones, of Boston, Mass., and Henry G. Molina, of San Juan, Porto Rico, on the brief), for plaintiff in error.

John A. McManus, of New York City (Oscar D. Duncan and Thomas J. Healy, both of New York City, and Charles Hartzell, of San Juan, Porto Rico, on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The court below sustained a demurrer to the plaintiff's amended complaint, and entered judgment for the defendant. The action is for breach of a written contract made in July, 1916, under which defendant agreed to transport by steamers from San Juan to New York plaintiff's output of sugar for the five crop years 1917/18 to 1921/22, inclusive, at the rate of 24 cents per 100 pounds. The eleventh paragraph of the contract reads as follows:

"If by reasons of force majeure either of the parties are unable to carry out this agreement in whole or part, such inability by either party will not subject such party to any claims for damages, nor will such inability void this agreement."

The plaintiff alleges:

"That on or about October 17, 1917, the defendant notified the plaintiff that the United States Shipping Board at Washington had requisitioned de-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
Certiorari denied 256 U. S. —, 42 Sup. Ct. 272, 66 L. Ed. —.

fendant's entire fleet, and from and after said date the defendant refused to perform the said contract on the ground that said requisition constituted force majeure and in consequence thereof it had become impossible for the defendant to carry out the said contract."

Also that recently—that is, shortly before bringing this suit on March 3, 1920—the plaintiff had been informed that the government commenced returning to the defendant its steamships during the month of February, 1919; that defendant wrongfully failed to notify the plaintiff of this fact until November or December, 1919, after all the plaintiff's 1919 crop had been shipped to New York at the rate of 40 cents per 100 pounds; that, immediately upon ascertaining that defendant was in a position to carry out its contract, plaintiff demanded performance of the contract, and tendered its sugar for transportation, but defendant wrongfully refused compliance, contending that the contract had completely terminated upon the requisitioning of its steamers in October, 1917.

The demurrer sets up the same contention—that the requisitioning of its steamers by the government in October, 1917, before any transportation was called for under the contract, entirely abrogated the contract.

[1] Turning to the contract, we observe that it was not a contract or charter party for a designated vessel, but was merely a contract to furnish transportation for the plaintiff's sugar crop. It contains this provision:

"It is understood that this contract is to be fulfilled on the steamers of the Bull Insular Line, Inc., or steamer chartered by them. They mutually agree that the insurance on chartered steamers will be at the same rate of the steamers of the Bull Insular Line, Inc., to have the privilege of placing the insurance at the same rate, terms, and conditions as the steamers of their own fleet."

We find nothing in the record which, as matter of law or as matter of fact, shows that it was impossible for the defendant, after its own steamers were requisitioned, to perform its contract by steamers chartered by it. This is enough to dispose of the demurrer. The case plainly falls within the principle illustrated by Lord Parker in the Tamplin Case, [1916] 2 A. C. 397, 423, where in dealing with implied frustrating conditions he says:

"Again, in determining whether any such term or condition can be properly implied, the nature of the contract is of considerable materiality. If, for example, the contract be for the hire of a particular horse on a particular day, it would be easy to imply a condition that the horse should still be living on the day in question. If, however, the contract were for the hire of a horse generally, it would be difficult, if not impossible, to imply a term relieving the hirer from liability, if his only horse died before the day arrived."

This contract was for transportation generally, not for the use of the particular steamers requisitioned by the government.

[2] But we are also unable to accept the view of the court below, that, assuming the contract was to be performed by the defendant's own steamers, the requisitioning of these steamers by the government in October, 1917, put an end to the contract.

The provision, "If by reasons of force majeure either of the par-

ties are unable to carry out this agreement in whole or part, such inability by either party will not subject such party to any claims for damages, nor will such inability void this agreement," seems to us plainly to cover such a situation. The contract was made in July, 1916, after the European war had been flagrant for almost two years. The parties must have known of the increasingly hazardous and chaotic condition of sea transport. There was an obvious possibility, if not probability, that the United States would become, as it subsequently was, involved in the war. The contract was made during the war, and in contemplation of changing war conditions. Under these circumstances it was natural for the parties to agree that inability to perform by reason of force majeure should suspend without liability for damages, but should not avoid the agreement. At any rate, the parties did so agree.

To hold, as the court below held, that the requisitioning by our government of the defendant's steamers for a period lasting only a little over two years, ended this five-year contract, would, we think, contravene the clearly expressed intent of the parties. We say this, assuming for the moment that such requisitioning constituted inability, notwithstanding the provision above quoted that the contract might have been fulfilled by steamers chartered by the defendant.

We have examined with care the cases cited in the brief filed by learned counsel for the defendant, and find no authorities, English or American, which sustain their contention. It is, of course, elementary that it is the duty of courts to construe and enforce, not to make, alter, or abrogate, contracts; that the doctrine of frustration rests upon an implied fundamental condition—as for instance, in a contract for personal services that the promisor shall continue to live. See the opinion of Earl Loreburn, in Tamplin's Case, [1916] 2 A. C. 404, where it is said, referring to an implied term of the contract excusing under the circumstances the party from performing the contract:

"It is in my opinion the true principle. for no court has an absolving power, but it can infer from the nature of the contract and the surrounding circumstances that a condition which is not expressed was a foundation on which the parties contracted."

The decision of the House of Lords in Metropolitan Water Board v. Dick, Kerr & Co., [1918] A. C. 119, relied upon by the defendant, is entirely consistent with our present holding. That case involved a contract, made in July, 1914, for the construction of extensive waterworks within a period of six years, with a provision for extending the time if the engineer required additions or enlargements, or if delays occurred in consequence of unusual inclemency of weather, strikes, disputes, and so on. In February, 1916, the work was stopped by the Minister of Munitions and the plant sold under his direction; so that the undertaking on that date became illegal and remained illegal up to the time of final decision in November, 1917. The court held this not to be "a case of a short and temporary stoppage, but of a prohibition in consequence of war, * * *" and not covered by the provision for an extension of time for such causes as were in the

contemplation of the parties to the contract when it was made; that by fair implication (inclusio unius exclusio alterius) vis major was not within the extension provision; that it was clear that the contract did not bind the parties to perform the legally impossible.

That case is radically different from the case at bar. Here the most that the defendant can contend is that, for a period apparently only two-fifths of that covered by the contract, its own steamers were taken from it by the government; so that, if such government taking was force majeure within the meaning of the contract, it was pro tanto, relieved from performance, and from damages for nonperformance, under this suspension provision of the contract. It would be a strange and unnatural construction of this paragraph to hold that the defendant should be relieved from performing when able to perform.

The fact that performance had become more costly was no legal reason for holding the contract ended.

We have no doubt that force majeure, as used in this contract, was intended by the parties to cover such interference with performance as governmental restraint or acts of the public enemy, interferences having a human origin, as distinguished from natural force. Day v. United States, 245 U. S. 159, 161, 38 Sup. Ct. 57, 62 L. Ed. 219; Railway Co. v. Columbus, 249 U. S. 399, 412, 39 Sup. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648.

See Crossman v. Burrill, 179 U. S. 100, 113,[1] an opinion by Mr. Justice Gray, in which the term vis major is construed as covering inability to perform due to war conditions. In the Metropolitan Water Case, [1918] A. C. 135, is a reference by Lord Atkinson to action of government as vis major. See, also, McLemore v. Louisiana State Bank, 91 U. S. 27, 23 L. Ed. 196; M. O. H. v. Hannevig (C. C. A.) 264 Fed. 311, 314.

The judgment of the District Court is vacated, with costs to the plaintiff in error, and the case is remanded to that court for further proceedings not inconsistent with this opinion.