**ISRAEL et al. v. LUCKENBACH S. S. CO., Inc.**

(District Court, S. D. New York. December 18, 1922.)

Shipping ⬅141(1)—Company operating all its vessels under government requisition not released from contracts as not continuing its service.

Government requisition of all shipping company's vessels, requiring the company to operate them under direction of the shipping board, did not absolve the company from liability for breach of its oral contract to carry cargo, made specific by three written exhibits, one of which was

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

executed after the vessels had been requisitioned, and all of which made the contract subject to the continuance of the company's service and the sailing of its steamers, and exempted it from liability for delay resulting directly or indirectly from war, where no proof was offered that the company attempted to secure other steamers, or to procure cargo space, and there had in fact been no discontinuance of service as contemplated by the contract.

In Admiralty. Libel in personam by Leon Israel and another against Luckenbach Steamship Company, Inc. Interlocutory decree to libelant.

Burlingham, Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper and William J. Dean, both of New York City, of counsel), for libelants.

Carter, Carter & Phillips, of New York City, for respondent.

AUGUSTUS N. HAND, District Judge. Libel against a carrier for breach of a freight contract. On September 25, 1917, Seager, as freight broker for the libelants, accepted the oral agreement of Mr. Ackerman, of the Luckenbach Steamship Company, to carry 1,500 tons of coffee for shipment during October and November, 1917, the Luckenbach Company to give 48 hours' notice of delivery to the vessel to be named by the Luckenbach Company. This contract was further made specific by three contracts, Exhibits A, B, and C, dated October 3, 10, and 16 respectively, initialed by Ackerman, on behalf of Luckenbach, and containing the following clauses:

"This contract is accepted, subject to the conditions specified in line bill of lading, and is further conditional upon the  continuance of the steamship company's service and the sailing of its steamers.

"Carriers shall not be liable for any loss, damage, or delay resulting directly or indirectly from war or hostilities between any powers."

Exhibits A, B, and C each specified a certain number of bags of coffee "to be applied against lot of 1,500 tons of coffee for October-November clearance—carrier's option," and provided "for shipment to Havre by steamers to be named by carrier on 48 hours' notice to shipper."

The vessels operated by the Luckenbach Company were requisitioned by the United States, some of them during the summer, and the remainder by telegram from the Shipping Board of October 12, 1917, and on November 16, 1917, the company notified the libelants that its service had "been interrupted," and that under the above-quoted conditional clause the company would be unable to provide space on its steamers for the cargo, and that the contract was thereby canceled.

The telegram to the Luckenbach Company, dated October 12, 1917, from Bainbridge Colby, of the Shipping Board, requisitioned all the ships over 2,500 tons, and by its terms became operative as to all those which had not sailed prior to October 15, at noon. Those which had sailed prior to that time were to complete their voyages as promptly as possible and to report for requisitioning.

A large part of the cargo had not been carried at the date of the letter of November 16, 1917. On that date the Pleiades carried a part of the cargo, though it was then under a time charter to the government. The libelants sue for breach of the freight contract. The vessels were

operated, and not owned, by the respondent, and continued to be so operated after requisition, though under direction of the Shipping Board.

If the original agreement of September 25 were to govern, there can be no doubt that the respondent could not avoid the contract without proving that it could not secure ships to carry the cargo, and no attempt to do this has been shown. The government had already requisitioned some of the Luckenbach fleet when Exhibits A and B were signed, and on October 16, 1917, the date of Exhibit C, all had been requisitioned. Each of these exhibits provided for shipment by steamers to be named by the carrier, and the last one was dated at a time when the agreement would be meaningless, if requisitioning of the existing Luckenbach fleet is to be regarded as a noncontinuance of the steamship company's service, within the meaning of the clause which I have quoted from Exhibits A, B, and C. It is highly improbable that parties should knowingly contract for a carriage conditioned upon the continuance of the steamship company's service, when that service, within the meaning of "continuance" which respondent seeks to give to the word, was either certain to cease, or had already ceased.

Moreover, "continuance of the service" was, in my opinion, necessarily dependent upon something more than the option of the respondent. There must have been a forced discontinuance of the service by reason of the inability to secure steamers, and no attempt of the respondent to obtain other steamers has been shown. In the present case the respondent was operating, though under the direction of the Shipping Board, the same vessels it had operated. It did not cease business, but, on the contrary, was as active as ever. It served the United States under the direction of the Shipping Board, instead of such customers as it chose.

No reason has been given for not assigning vessels to carry libelants' coffee, and no attempt has been shown to procure cargo space for the merchandise which was not carried. In my opinion discontinuance means unavoidable discontinuance, and not mere cessation; but, even if cessation be the proper meaning, there was no cessation of the service of respondent as an operating company. As long as the business continued, the respondent was bound to secure and assign ships for libelants' cargo. If steamers had been designated in the contracts, and then requisitioned, the case of Vacuum Oil Co. v. Luckenbach (D. C.) 275 Fed. 998, would have applied, and the contract would have been subject to cancellation. The situation disclosed here was quite different, and the respondent by failing to carry the coffee broke its contract. Société, etc., v. Bull Insular Line (C. C. A.) 276 Fed. 783; J. Aron & Co., Inc., v. Luckenbach Steamship Co., Inc. (D. C.) 282 Fed. 937.

An interlocutory decree is granted to the libelants, with the usual reference to report as to damages.