**SEDCO INC., Plaintiff,**

v.

**S.S. STRATHEWE, her engines, boilers, etc., the Peninsular and Oriental Steam Navigation Company, the Peninsular and Oriental Steam Navigation Company Limited, and Strick Line Ltd., Defendants.**

No. 83 Civ. 3298 (RO).

United States District Court, S.D. New York.

Jan. 15, 1986.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City (Alan Loesberg, Anthony J. Pruzinsky, of counsel), for plaintiff.

Kirlin, Campbell & Keating, New York City (Donald Burke, Keith Heard, of counsel), for defendants.

OPINION

OWEN, District Judge.

In early June 1982, the defendants, hereafter collectively "P & O" for The Peninsular and Oriental Steam Navigation Company and its vessels, received from plaintiff Sedco Inc. in Saudi Arabia 18 packages

containing oil field drilling equipment to be shipped to Houston, Texas. These were placed aboard one of P & O's vessels called the Strathewe. Within a few days of the vessel's departure, the British Government, embroiled in the Falkland Islands war, requisitioned the vessel under its war powers and directed that the vessel proceed directly to Southampton, England to be fitted out for war service. The British Government, aware that the vessel was carrying cargo, directed the vessel be delivered without the cargo, but it did not instruct P & O how to accomplish this. P & O, having determined that the island of Malta in the Mediterranean was not only on the course to Southampton but also on the course of one of its other vessels coming by at a later time en route to Houston, took the reasonable action of off-loading the said 18 units (17 boxes and one loose package) at Malta along with other cargo destined for the United States.

However P & O did not notify the plaintiff in any way that the cargo had been off-loaded. Indeed the plaintiff, having a buyer for the equipment, and expecting the Strathewe to arrive approximately the end of July, began inquiring of P & O in mid-July as to the vessel's arrival. The plaintiff was told the cargo would arrive aboard the Strathewe on August 24, although the fact was that the Strathewe had already discharged the plaintiff's cargo at Malta on June 12. It was not until August 4, upon plaintiff's third inquiry, that P & O told it that (a) the cargo had, in fact, been offloaded in Malta and (b) that the cargo had been reloaded on the Strathesk which had left Malta the day before. The Strathesk thereafter arrived in Houston on August 30th, but unhappily whereas 18 pieces had been offloaded in Malta and the manifest stated that 18 pieces had been reloaded on the Strathesk, in fact only 16 pieces had been reloaded on the Strathesk, the other 2

pieces having been left on the pier in Malta.[1] And while an extensive search was made at many ports including Malta, the 2 missing boxes were not relocated on the pier at Malta until 1984 by which time the ability to complete the delivery and sale of the merchandise had long since passed. The equipment was thereafter sold for salvage.

■ P & O takes two positions: first, that it is entitled to immunity from suit because of the requisition of the Strathewe under the "restraint of princes" exclusion under COGSA, 46 U.S.C. § 1304(2)(g). Second, it contends that the $500 package limitation contained in § 1304(5) is applicable and therefore its responsibility in any event cannot exceed $1,000.

While it is unquestionably so that the Strathewe was "restrained" or requisitioned by the Crown for the Falkland Islands' conflict, the restraint was only of the vessel. Thus, it does not flow from this fact alone that P & O is discharged from liability, since the restraint did not eliminate either legally or factually P & O's ability and duty to "properly and carefully ... handle [and] care for ... the goods." 46 U.S.C. § 1303(2). P & O thereafter *did* discharge the cargo in an apparently sensible fashion. However from the discharge on, P & O's responsibility towards this cargo was not reasonably met. While it had to unload the cargo somewhere, I conclude that it unquestionably had a duty to advise plaintiff that the cargo had been off-loaded at Malta and thereby to enable plaintiff, interested in the receipt of the cargo, to take any steps it felt necessary to protect it and/or forward it, whether by P & O or otherwise. Obviously, once the voyage had started, the plaintiff had a right to expect its cargo to be safe in the hold of the Strathewe, and correspondingly, it was entitled to be informed that this was no longer so—even though the change

---

1. Defendant claims the boxes were not properly marked but I find that the name "Sedco" on the boxes was adequate enough for any reasonable stevedore to have understood what they were. In addition 18 pieces having been unloaded at Malta (and properly counted for the off-loading manifest), 18 pieces should have been loaded back on. I note that the manifest upon reloading the Strathesk, which recites 18 pieces, was obviously in error, meaning that a number of people from stevedores to ship personnel did not count from 16 to 18.

was occasioned by compelling circumstances. Next, it is woefully clear that having unloaded 18 SEDCO parcels onto the pier P & O had a duty to reload *18* SEDCO parcels onto the next vessel. It did not do this. Notwithstanding that its manifest tallied 18, in fact it only reloaded 16 and notwithstanding the claim of confusing labels on the 2 neglected boxes, both did say SEDCO. Thus, some person or persons were clearly negligent for not counting while loading 16 SEDCO boxes and saying: "Where are the other two?" Finally, after the two were reported missing, I find incredible defendant's inability to "find" the two large boxes marked SEDCO which were sitting on the very pier from which their 16 counterparts had been picked up and shipped.

In any event, I find that the failure of P & O to notify plaintiff of the offloading at Malta, its erroneous response to plaintiff that the cargo was still on the Strathewe long after it had been off-loaded which error was repeated even after the Strathesk had sailed with the short cargo, its failure through its own agents to get all 18 parcels back on the succeeding vessel, and its failure to find them immediately after the shortage was discovered, taken together constitute an unreasonable deviation under maritime law. I therefore conclude that: (1) the "restraint of princes" defense is not available; (2) P & O is responsible to the plaintiff for the neglected cargo; (3) because of the unreasonableness of the deviation, the $500 package limitation does not apply; and (4) therefore plaintiff is entitled to its full damages. *General Elec. Co. Intern. v. S.S. Nancy Lykes*, 706 F.2d 80 (2d Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983).

Under the stipulated facts, plaintiff had a contract to sell the cargo for $350,000. After the 2 boxes were eventually found 2 years later, plaintiff was at best able to realize $167,362.52 at what amounted to salvage. Given this, the plaintiff is entitled to recover the sum of $182,637.48, the difference between its contract price and the eventual salvage price of the goods. *Inter-natio Inc. v. M.S. Taimyr*, 602 F.2d 49 (2d Cir.1979). Interest is also awarded from September 1, 1982 to the date of judgment at the rate of 11.05 percent, that being the average "prime rate" charged by banks on short-term business loans as reported by the Federal Reserve Bulletin for the period from September 1, 1982 through December 31, 1985.

Plaintiff is awarded judgment against defendants accordingly, together with costs and disbursements to be taxed by the clerk. The foregoing constitutes the Court's findings of facts and conclusions of law and is so ordered.