**SEDCO, INC., Plaintiff-Appellee,**

v.

**S.S. STRATHEWE, her engines, boilers, etc., the Peninsular and Oriental Steam Navigation Company, the Peninsular and Oriental Steam Navigation Company Limited and Strick Line Ltd., Defendants.**

**Appeal of The PENINSULAR AND ORIENTAL STEAM NAVIGATION COMPANY, the Peninsular and Oriental Steam Navigation Company Limited and Strick Line Ltd., Defendants-Appellants.**

**No. 1313, Docket 86–7123.**

United States Court of Appeals, Second Circuit.

Argued June 2, 1986.

Decided Aug. 25, 1986.

---

Anthony J. Pruzinsky, New York City (Alan S. Loesberg, Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, of counsel), for plaintiff-appellee.

Donald Burke, New York City (Keith W. Heard, Kirlin, Campbell & Keating, New York City, of counsel), for defendants-appellants.

Before NEWMAN, PIERCE and MINER, Circuit Judges.

MINER, Circuit Judge:

In this action for loss of value of cargo shipped aboard their vessel, defendants appeal from a judgment entered in the United States District Court for the Southern District of New York after a bench trial before Judge Richard Owen. The district court found that defendants' conduct constituted an unreasonable deviation within the meaning of the Carriage of Goods by Sea Act of 1936 ("COGSA"), 46 U.S.C. §§ 1300–1315 (1982), thereby voiding the statutory $500 per package limitation of liability and allowing plaintiff cargo owner to recover $182,637.48 in damages. The district court also held that defendants were not entitled to assert the COGSA "restraint of princes" defense. We reverse the judgment to the extent that it does not limit defendants' liability to $500 per package and remand the case with directions to enter judgment in plaintiff's favor for $1,000.

## I. BACKGROUND

The dispute in this case arises out of the British government's requisition of the M/V STRATHEWE for use in the Falkland Islands War. The STRATHEWE was owned by defendants-appellants, The Peninsular and Oriental Steam Navigation Company, The Peninsular and Oriental Steam Navigation Company Limited, and Strick Line Limited (collectively referred to as "P & O"). Plaintiff-appellee Sedco, Inc. was both shipper and consignee of eighteen packages of oil drilling equipment shipped in 1982 aboard the STRATHEWE.

In the early part of June, 1982, P & O received the eighteen packages from Sedco in Dubai, U.A.E., to be shipped to Houston, Texas, where Sedco had contracted to sell the equipment for $350,000. Within a few days of the vessel's departure from Dubai, the British Government requisitioned her under its war powers for duty in the Falkland Islands War. The British Government informed P & O:

Your vessel STRATHEWE is required for service in connexion with the Falkland Islands Emergency. Request you instruct your master to proceed to Southampton at best speed discharging present cargo at a port convenient to you subject to minimum delay.

Having determined that Malta was not only on the STRATHEWE's course to Southampton but also on the course of one of its other vessels coming by at a later date en route to the United States, P & O obtained the permission of the British Government to transship the United States-bound cargo aboard the STRATHEWE at Malta. On June 12th, P & O off-loaded Sedco's cargo at Malta along with the other cargo destined for the United States.

Panalpina, Sedco's customs broker in Houston, twice inquired of P & O in July as to the vessel's estimated time of arrival. In both instances, P & O told Panalpina that the cargo would arrive aboard the STRATHEWE on August 24th. On August 4th, P & O informed Panalpina that the cargo in fact had already been discharged at Malta and had been reloaded on the M/V STRATHESK, which had left Malta the day before. The STRATHESK arrived in Houston on August 30th; although Sedco's eighteen pieces of cargo had been off-loaded at Malta and the manifest stated that all eighteen had been reloaded on the STRATHESK, only sixteen pieces actually had been placed aboard the STRATHESK. The remaining two pieces were left on a pier in Malta. An extensive search was conducted for the two missing boxes, but they were not located until 1984, by which time their only value to Sedco was as salvage.

In explanation of the delay in locating the cargo, P & O asserted that the two packages were improperly marked by Sedco and that the manifest, which erroneously noted that eighteen packages had been reloaded on the STRATHESK, caused P & O to focus the search at ports between Malta and Houston.

After a bench trial, Judge Owen found in favor of Sedco for the full amount of its

loss, $182,637.48 (the difference between its resale contract price and the salvage price obtained for the equipment). In so holding, Judge Owen found that the COGSA $500 per package limitation of liability, 46 U.S.C. § 1304(5), was inapplicable because P & O's conduct amounted to an unreasonable deviation. *Sedco Inc. v. S.S. Strathewe,* 630 F.Supp. 120, 122 (S.D.N.Y.1986). In addition, Judge Owen rejected P & O's argument that it was totally immune from liability under COGSA's "restraint of princes" defense, 46 U.S.C. § 1304(2)(g). 630 F.Supp. at 122.

On appeal, P & O contends that deviation heretofore has been limited to "geographic deviation" and "unauthorized on-deck stowage," and therefore that its allegedly negligent conduct in handling Sedco's cargo or failing to inform Sedco of the transshipment at Malta cannot constitute a deviation. Consequently, P & O asserts, its liability should be limited to $1,000. P & O also renews its contention that it is completely immune from liability under the "restraint of princes" defense.

## II. DISCUSSION

### A. *Deviation and Limitation of Liability*

COGSA, which expresses adherence to the Hague Rules of 1921, the Brussels Convention of 1924, and the earlier Harter Act of 1893, 46 U.S.C. § 190–196, was enacted to carry over into the international sphere the uniform liability rules governing domestic voyages found in the Harter Act. COGSA strives to achieve this uniformity, in part, by mitigating the common law liability of carriers as insurers. Under section 4(5) of COGSA, 46 U.S.C. § 1304(5), neither the carrier nor the ship may be liable for any loss of or damage to goods in an amount exceeding $500 per package, unless the nature and value of the goods have been declared by the shipper and inserted in the bill of lading. *Robert C.*

*Herd & Co. v. Krawill Machinery Corp.,* 359 U.S. 297, 301, 79 S.Ct. 766, 769, 3 L.Ed.2d 820 (1959). We previously have adopted the rule that an unreasonable deviation bars a carrier from invoking COGSA's $500 per package limitation of liability. *E.g., Iligan Integrated Steel Mills, Inc. v. S.S. John Weyerhaeuser,* 507 F.2d 68, 70–73 (2d Cir.1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1954, 44 L.Ed.2d 452 (1975); *Encyclopedia Britannica, Inc. v. S.S. Hong Kong Producer,* 422 F.2d 7, 18 (2d Cir.1969), *cert. denied,* 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970); *Jones v. The Flying Clipper,* 116 F.Supp. 386, 387–91 (S.D.N.Y.1953); Annot., 67 A.L.R.Fed. 263 (1984). Having recently reaffirmed this rule, *B.M.A. Industries, Ltd. v. Nigerian Star Line, Ltd.,* 786 F.2d 90, 91 (2d Cir.1986) (per curiam); *cf. Thyssen, Inc. v. S.S. Fortune Star,* 777 F.2d 57, 63–66 (2d Cir.1985) (holding that deviation does not entitle plaintiff to punitive damages), we are not disposed to reconsider its wisdom here. Instead, we need only determine whether P & O's conduct in this case amounted to an unreasonable deviation so as to deprive it of the statutory limitation of liability.

With respect to deviation, COGSA provides:

> Any deviation in saving or attempting to save life or property at sea, or any reasonable deviation shall not be deemed to be an infringement or breach of this chapter or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom: *Provided, however,* that if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable.

46 U.S.C. § 1304(4). There is no dispute here that the STRATHEWE's excursion to Malta was a departure from its agreed or usual route and thus constituted a deviation.[1] Moreover, the stop at Malta was

---

1. There is, however, some doubt whether the STRATHEWE's detour to Malta was "voluntary." Unless a ship *voluntarily* and unjustifiably departs from its agreed or usual course, a deviation has not occurred. *The Willdomino v. Citro Chemical Co.,* 272 U.S. 718, 47 S.Ct. 261, 71 L.Ed. 491 (1927); *American Tobacco Co. v. The Katingo Hadjipatera,* 81 F.Supp. 438, 449 (S.D.N.

"for the purpose of ... unloading cargo" and thus, prima facie, was unreasonable. *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 338 (2d Cir. 1986). Our inquiry, therefore, must focus on whether P & O adequately rebutted the COGSA presumption of unreasonableness.

■ The proviso found in section 4(4) of COGSA, which creates the presumption, did not appear in the Hague Convention Rules, but was added by Congress when COGSA was enacted. As a leading admiralty treatise suggests, the proviso's rationale "seems to be that the carrier ought not to be allowed to deviate with no other motive than the increase of his own revenues; thus, the proof required to overcome the *prima facie* unreasonableness of such a deviation would have to show something more than mere reasonableness from the point of view of the carrier...." G. Gilmore & C. Black, *The Law of Admiralty* § 3–40, at 179 (2d ed. 1975).

We agree with the district court that the STRATHEWE's deviation to Malta was "reasonable" and "sensible," 630 F.Supp. at 121, and therefore find that P & O met its burden of demonstrating that the deviation to Malta was objectively reasonable. Certainly, that the British Government requisitioned the STRATHEWE and commanded that she discharge her cargo at a convenient port and proceed to Southampton is sufficient by itself to support this finding. Moreover, from the facts presented at trial, it appears that Malta indeed was the most logical port for transshipping the cargo bound for the United States. P & O previously had regularly called at Malta, was familiar with that port, and had an agent there that knew precisely what was necessary to accomplish the transshipment. In addition, Malta was on the course that the STRATHEWE needed to take to reach Southampton, and also was on the STRATHESK's intended course to the United States. These facts, when taken together, leave no doubt that the decision to effectuate the transshipment at Malta was reasonable.

■ Accordingly, the only question remaining is whether the subsequent negligence of P & O or its agents (1) in failing to reload all eighteen pieces of cargo at Malta, (2) in erroneously responding to Sedco and its agent in mid-July that the cargo was still aboard the STRATHEWE, and (3) in failing to immediately locate the misplaced cargo, constitutes an unreasonable deviation. We believe that these actions did not constitute a deviation and therefore reverse the district court's decision to the extent it found to the contrary.

The doctrine of deviation in the law of carriage may be traced to the pre-COGSA law of marine insurance. In voyage policies, the insurer was deemed to have accepted only that risk reasonably contemplated. Where the vessel, without excuse, voluntarily and unjustifiably departed from the usual commercial or contractual route, the policy was voided, and, in order to protect shippers in the event cargo was lost, the carrier was placed in the position of the insurer for liability purposes. We have recognized that there are persuasive reasons supporting the view that COGSA has abolished the harsh doctrine that cast a carrier as an insurer after deviation and prevented it from invoking either a contractual or statutory limitation on liability. *B.M.A. Industries*, 786 F.2d at 91; *Thyssen*, 777 F.2d at 63–65; *Iligan*, 507 F.2d at 70–73.

■ Nonetheless, having accepted the doctrine, we have limited it to two situations: geographic deviation and unauthorized on-deck stowage ("quasi-deviation").

---

Y.1948) ("it is confusing ... to speak of deviation since it is obvious that the change in route was necessitated by the exigencies of war"), *modified on other grounds*, 194 F.2d 449 (2d Cir.1951), *cert. denied*, 343 U.S. 978, 72 S.Ct. 1076, 96 L.Ed. 1370 (1952). Here, the British government required the STRATHEWE to off-load its cargo somewhere. Thus, to some extent, the excursion to Malta was not voluntary. On the other hand, P & O was given some discretion in determining where to accomplish the off-loading. Since we ultimately decide that the STRATHEWE's detour to Malta was reasonable, we need not address voluntariness in concluding that no unreasonable deviation occurred.

*B.M.A. Industries*, 786 F.2d at 91–92; *Italia di Navigazione, S.p.A. v. M.V. HERMES I*, 724 F.2d 21 (2d Cir.1983) (per curiam); *Iligan*, 507 F.2d at 71–72. As explained by Judge Weinfeld in *The Flying Clipper*, 116 F.Supp. at 389, the doctrine of deviation is applicable only to "the carrier's voluntary action in unjustifiably deviating" when the deviation has "so changed the essence of the agreement as to effect its abrogation." He observed that mere negligence, lack of due diligence, or a failure to properly handle, stow, care, or deliver cargo, never has constituted deviation. Although such conduct might violate the duty imposed by COGSA properly and carefully to carry and care for the cargo, 46 U.S.C. § 1303(2), it is not a deviation having the effect of voiding either a contractual or statutory limitation of liability.

P & O's post-discharge conduct, however, amounts to no more than negligence. P & O's agents in Malta failed to reload two of the eighteen pieces of cargo owned by Sedco. To make matters worse, these agents incorrectly indicated on the manifest that all eighteen pieces of cargo had been reloaded aboard the STRATHESK. Then, in response to Sedco's inquiries, P & O erroneously stated in July that the cargo still was aboard the STRATHEWE. Finally, P & O failed to locate the misplaced cargo within a reasonable period of time. Nevertheless, this conduct, albeit a violation of 46 U.S.C. § 1303(2), does not void the $500 per package limitation of liability.

Sedco cites several cases said to stand for the proposition that "any carrier misconduct which amounts to a material breach of the contract of carriage constitutes a deviation, and makes the carrier liable for the full amount of the cargo owner's damages ...," and argues that unreasonable delay may constitute a devia-

tion. The cases cited, however, either involve one of the two types of deviation recognized in this circuit, or were decided before the enactment of COGSA, or were decided in circuits where deviation does not void the COGSA limitation of liability. *E.g.*, *Spartus Corp. v. S.S. Yafo*, 590 F.2d 1310 (5th Cir.1979) (geographic); *Hellenic Lines, Ltd. v. United States*, 512 F.2d 1196 (2d Cir.1975) (geographic); *Du Pont de Nemours International S.A. v. S.S. Mormacvega*, 493 F.2d 97 (2d Cir.1974) (on-deck stowage); *Atlantic Mutual Insurance Co. v. Poseidon Schiffahrt, G.m.b.H.*, 313 F.2d 872 (7th Cir.) (deviation does not preclude COGSA limitation of liability), *cert. denied*, 375 U.S. 819, 84 S.Ct. 56, 11 L.Ed.2d 53 (1963); *Kemsley, Millbourn & Co. v. United States (Morristown-Canastota)*, 19 F.2d 441 (2d Cir.1927) (pre-COGSA); *I.N.A. v. S.S. American Argosy*, 1984 A.M.C. 186 (S.D.N.Y.1983) (geographic), *rev'd*, 732 F.2d 299 (2d Cir.1984); *The Citta di Messina*, 169 F. 472 (S.D.N.Y.1909) (pre-COGSA). In any event, the proposition advanced by Sedco is without support in this circuit, where the doctrine of deviation has been carefully limited, especially in the last decade.[2] As stated in *B.M.A. Industries*, "[t]he principle of quasi-deviation is arguably inconsistent with COGSA, and is 'not one to be extended.'" 786 F.2d at 92 (quoting *Iligan*, 507 F.2d at 72); *accord* G. Gilmore & C. Black, *supra*, § 3–42, at 183 ("It would seem unwise to extend analogically and by way of a metaphor a doctrine of doubtful justice under modern conditions, of questionable status under COGSA, and of highly penal effect.").

### B. *Restraint of Princes*

 We nevertheless reject P & O's contention that it is entitled to full immunity from liability under COGSA's "restraint

---

**2.** Sedco cites one modern case from the Southern District of New York that apparently supports its position. *Hellenic Army Command v. M.V. Livorno*, 1981 A.M.C. 1288 (S.D.N.Y.1981) (not officially reported). To the extent that *Hellenic Army Command* holds that delay may constitute an unreasonable deviation, we reject it. The court there relied on *The Citta di Messi-*

*na*, which rejected the notion that delay constituted deviation, and *Atlantic Mutual*, which was decided in a circuit where deviation does not void the COGSA limitation of liability. Furthermore, the court in *Hellenic Army Command* failed even to cite *Iligan*, 507 F.2d 68, in which we clearly had limited the situations where the COGSA limitation of liability may be avoided.

of princes" defense. 46 U.S.C. § 1304(2)(g).[3] Although we agree that the STRATHEWE was requisitioned by the British government, that requisition does not excuse P & O's subsequent failure to "properly and carefully ... handle [and] care for the goods" after they were unloaded at Malta. In order for the restraint of princes defense to shield a carrier from liability, the restraint must be a proximate cause of the loss. *Cf. The Malcolm Baxter, Jr.*, 277 U.S. 323, 48 S.Ct. 516, 72 L.Ed. 901 (1928) (cargo owners permitted to recover for damage caused by shipowner's breach of warranty of seaworthiness but not for damage caused by United States embargo). Here, P & O's negligent handling of Sedco's cargo was an intervening event which broke the causal chain between the restraint of the STRATHEWE by the British government and the ultimate injury.

### III. CONCLUSION

Accordingly, we agree with the district court that the STRATHEWE's deviation to Malta for the purpose of transshipping the United States-bound cargo was reasonable. We also support the district court's finding that the requisition of the STRATHEWE was not the proximate cause of the loss suffered by Sedco. The district court's characterization of P & O's post-discharge conduct as a deviation, however, is contrary to the doctrine of deviation as established in this circuit. We therefore conclude that COGSA's $500 per package limitation of liability is applicable and remand the case with directions to enter judgment in favor of Sedco for $1,000.

---

**3.** This defense refers to a sovereign's exercise of its power controlling and divesting the dominion or authority of an owner over its ship. *Baker Castor Oil Co. v. Insurance Co. of America*, 157 F.2d 3, 4–5 (2d Cir.1946), *cert. denied*, 329 U.S. 800, 67 S.Ct. 494, 91 L.Ed. 684 (1947). As the district court noted, the STRATHEWE "unquestionably" was "'restrained' or requisitioned by the Crown for the Falkland Islands' conflict...." 630 F.Supp. at 121. Indeed, commandeering of ships by governments for use in

military operations traditionally has been considered a restraint of princes. *Earn Line S.S. Co. v. Sutherland S.S. Co.*, 254 F. 126, 129–34 (S.D. N.Y.1918), *aff'd sub nom. The Claveresk*, 264 F. 276 (2d Cir.1920); *Vacuum Oil Co. v. Luckenbach S.S. Co.*, 275 F. 998, 1000–01 (E.D.Va.1921); *cf. Texas Co. v. Hogarth Shipping Co.*, 256 U.S. 619, 41 S.Ct. 612, 65 L.Ed. 1123 (1921) (requisition by British government of British ship for use in war dissolves charter party and excuses shipowner from performance).