**AMERICAN HOME ASSURANCE CO., Plaintiff,**

v.

**M/V TABUK, et al., Defendants.**

**No. 00 CIV 703 VM.**

United States District Court, S.D. New York.

Nov. 5, 2001.

William E. Ecenbarger, Jr., Edward c. Radzik, Donovan, Parry, Carbin, McDermott & Radzik, New York, NY, for American Home Assur. Co.

## DECISION AND ORDER

MARRERO, District Judge.

American Home Assurance Company ("American Home") brings this action, pursuant to the Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300 *et seq.* ("COGSA"), seeking recovery of the value of certain cargo lost during trans-Atlantic transport by defendants United Arab Shipping Company (S.A.G.) ("United Arab") and M/V TABUK ("TABUK") (hereinafter collectively referred to as "United Arab").

Defendants argue that their liability should be limited pursuant to section 1304(5) of COGSA.

Prior to the start of the bench trial in this action, the Court granted judgment to American Home on the issue of liability and thereafter conducted a trial limited to the issue of damages. The Court now sets forth its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court authorizes judgment for American Home in damages in an amount of $50,000.00 plus interest.

## FINDINGS OF FACT[1]

Plaintiff American Home was the marine cargo insurer of certain cargo described below and is subrogated to the rights of Raytheon Systems Company ("Raytheon"), the beneficiary of Hughes Aircraft Systems International ("Hughes"). Defendant TABUK is a ship employed in the common carriage of merchandise by water for hire, and United Arab is the owner of the TABUK.

On or about February 12, 1999, Hughes delivered one hundred Tow 2A missiles (the "Cargo")—manufactured by Raytheon—to defendants at the port in Wilmington, North Carolina for delivery to the Kuwait National Guard. The Cargo was placed into nine pallets; eight pallets contained twelve missiles, and one pallet contained four missiles. The nine pallets were loaded into a 20–foot ocean shipping container for transport. The bill of lading provides that goods "may be carried on deck at the ocean carrier's option and if carried on deck shall not be required to specifically note, mark or stamp any state-

---

1. While the Court has reviewed and considered all of the live testimony, designated deposition testimony and direct testimony submitted by affidavit that has been offered in connection with the trial in this matter, the Court addresses only those portions of testimony relevant to its legal conclusions.

ment of on-deck carriage on this bill of lading any custom to the contrary notwithstanding."

United Arab undertook to transport the Cargo to Kuwait aboard the TABUK and stowed the Cargo on-deck at Hatch Number 2 for voyage number 102. On or about February 15, 1999, the container with the Cargo was lost overboard during a storm while the TABUK was traveling in the North Atlantic Ocean.

Raytheon had insured the Cargo with American Home, which issued a certificate of insurance on or about February 11, 1999. As a result of the loss of the Cargo, Raytheon submitted a claim to American Home for $2,560,250.00. American Home paid the claim and now seeks recovery of this amount in damages from United Arab.

### CONCLUSIONS OF LAW

American Home advanced two arguments at the trial in this matter: (1) that the stowage and carriage of Cargo on the deck of the TABUK was an unreasonable deviation for which United Arab should not be permitted to limit their liability and (2) that it should recover additional damages for United Arab's spoliation of evidence. The Court has considered both legal arguments and addresses each in turn.

### A. BREACH OF CONTRACT OF CARRIAGE

▮ Under the doctrine of unreasonable deviation, where a carrier's performance in shipping goods deviates unreasonably from the terms agreed to in a bill of lading, the carrier is deprived of all limitations on liability on the ground that such deviations ousted the contract of carriage and made the carrier fully responsible for the cargo as an insurer. *See General Elec. Co. Int'l Sales Div. v. S.S. Nancy Lykes*, 706 F.2d 80, 87 (2d Cir.

1983). A deviation is unreasonable where "in the absence of significant countervailing factors, the deviation substantially increases the exposure of cargo to foreseeable danger that would have been avoided had no deviation occurred." *SNC S.L.B. v. M/V Newark Bay*, 111 F.3d 243, 248 (2d Cir.1997). The deviation doctrine has been limited to two situations: geographic deviation from the route of the voyage and unauthorized on-deck stowage. *See Sedco, Inc. v. S.S. Strathewe*, 800 F.2d 27, 31 (2d Cir.1986).

▮ In this case, American Home has contended that stowage of the Cargo on the TABUK's deck at Hatch Number 2 constitutes a deviation. *See* Tr. at 270–71, 273. At trial, American Home argued that the deviation in this case was "per se unreasonable" (Tr. at 274) because (1) stowage at Hatch Number 2 did not conform with the ship's Cargo Securing Manual; (2) the total number of containers on deck exceeded the figure represented in the Lloyd's Register of Shipping and in the TABUK's own brochure as the number of containers that could be safely loaded on deck; and (3) the chain used to secure the Raytheon container was "deficient in terms of its safe working load." *See* Tr. at 270–71.

In opposition, while United Arab concedes that even if stowage on deck is a deviation (*see* Tr. at 275), United Arab had expressly reserved the discretion in the bill of lading to employ such stowage, and that it was reasonable to do so, pursuant to 46 U.S.C.App. § 1304(4), as per the Cargo Securing Manual because of safety and commercial concerns and because Hatch Number 2 was a contemplated stowage area for containers on the TABUK. *See* Tr. at 276–78. United Arab further argues it does not lose its limitation even if it was negligent, grossly negligent or reck-

less in connection with stowage of the Cargo, including the adequacy and condition of the chains. *See id.*

To the extent American Home argues that carriers should not benefit from the limitation because they were negligent, such culpability is not an unreasonable deviation. United Arab has argued that "[t]hings like quasi deviation or multiple mistakes or negligence or gross negligence or even recklessness [are] not a deviation." Tr. at 277. The Court agrees. The Second Circuit in *Sedco* noted that "mere negligence, lack of due diligence, or a failure to properly handle, stow, care, or deliver cargo, never has constituted deviation." 800 F.2d at 32; *see General Elec.*, 706 F.2d at 87 ("Unlike ordinary risks of shipping such as negligence in the stowage or handling of cargo or lack of due diligence in making the vessel seaworthy, unreasonable deviations are 'fundamental breach[es] which go[ ] to the very essence of the undertaking' ") (citation omitted); *Nemeth v. General Steamship Corp., Ltd.*, 694 F.2d 609, 613 (9th Cir.1982) ("Mere negligence in the stowage or handling of cargo, which might be considered an inherent risk of shipping, is not a deviation.").

Moreover, even if stowage on deck had been a contractual deviation, it would have been a reasonable one. In *Du Pont de Nemours Int'l S.A. v. S.S. Mormacvega*, 493 F.2d 97 (2d Cir.1974), the Second Circuit observed that "technological innovation and vessel design may justify stowage other than below deck" and affirmed a trial court's determination that on-deck stowage of a container on a specially designed container ship constituted a reasonable deviation. Since *Du Pont*, courts have held as a matter of law that on-deck stowage on container ships designed for such stowage is reasonable. *See English Elec. Valve Co., Ltd. v. M/V Hoegh Mallard*, 814 F.2d 84, 89 (2d Cir.1987); *Alter-native Glass Supplies v. M/V Nomzi*, No. 97 Civ. 4387, 1999 WL 2870 (S.D.N.Y. Jan.4, 1999); *Insurance Co. of N. Am. v. Blue Star (North America), Ltd.*, No. 95 Civ. 9499, 1997 WL 345235 (S.D.N.Y. June 20, 1997).

Here, the Court finds that the TABUK was modified to carry containers on its deck, including Hatch Number 2, and that the modifications permitted the safe carriage of such goods on deck. While American Home devoted the bulk of the trial to testimony and documents tending to show that the modifications made on the TABUK to permit on-deck stowage and the chains used to lash the Cargo were both substandard, the essence of such evidence and arguments is that United Arab's conduct constituted negligence. As discussed above, such contentions are immaterial to the issue of whether an alleged deviation was unreasonable.

Moreover, the Court understands that hazardous materials like the Cargo are usually stored on deck; that it is not safe to store such materials below deck because it is more difficult to fight and contain a fire below deck and because the potential damage from fire and explosions are vastly greater below deck; and that for these reasons all other hazardous materials on TABUK's voyage 102 were stored on-deck. *See* Tr. at 158–162. In addition, the Court finds that the Cargo was not necessarily subject to greater risks than the cargo stowed under the deck and that deck stowage was used before on TABUK voyages. For these reasons, the Court concludes that any deviation here was reasonable.

### B. *SPOLIATION OF EVIDENCE*

■ American Home argues that United Arab wilfully and intentionally disposed of the failed lashings; that its expert therefore was unable to inspect the lashings; that United Arab willfully and inten-

tionally removed, destroyed and failed to produce certain lashing gear equipment reports and summaries; and that such failure to preserve crucial evidence after the loss of the Cargo constitutes spoliation of evidence for which damages are appropriate. *See* Compl. ¶¶ 17–21.

The Court finds that American Home failed to present adequate evidence at trial to support its spoliation claim. Even if such evidence had been presented, the Court concludes that this claim has no bearing on whether the acknowledged deviation in this case was reasonable. Accordingly, the Court concludes there is no sufficient basis to grant American Home the relief it seeks on this claim.

## C. *DAMAGES*

■ American Home argues that it is entitled to recover approximately $2,560,250.00 million which represents the value of the 100 rockets at the time of loss. *See* Affidavit of Jeffrey L. Derrick, sworn to May 22, 2001, ¶ 9; Tr. at 6. United Arab argues that the carrier may limit liability to $500 per package in accordance with the provisions of COGSA, 46 U.S.C.App. § 1304(5) (*see* Answer ¶ 27) and suggests that its liability is either $4,500 (9 packages) or $50,000 (100 packages), depending on whether the number of COGSA packages are the number of pallets shipped (9) or the number of boxes shipped (100). *See* JPTO at 3.

For the reasons set forth above, the Court concludes that defendants are entitled to limit their liability. The Court has reviewed the bill of lading which contains a reference to 100 rockets but does not refer to packages of any kind. Accordingly, the Court finds that United Arab is liable for the 100 packages lost at sea and is directed to pay $50,000.00 to American Home.

## D. *PRE–JUDGMENT INTEREST*

■ It is well-established in this Circuit that pre-judgment interest should be awarded in admiralty cases absent exceptional or extraordinary circumstances. *See Jones v. Spentonbush–Red Star Co.,* 155 F.3d 587 (2d Cir.1998); *Magee v. United States Lines, Inc.,* 976 F.2d 821 (2d Cir.1992). The rate used in awarding such prejudgment interest rests within the sound discretion of the Court. *See Ingersoll Milling Mach. Co. v. M/V Bodena,* 829 F.2d 293 (2d Cir.1987).

In this case, the Court does not find any exceptional circumstances to warrant denial of pre-judgment interest. Accordingly, the Court awards prejudgment interest compounded annually at a rate based on an average of the Treasury bill rates fixed for each of the years 1997 through and including 2000.

### *CONCLUSION AND ORDER*

Based on the foregoing, it is hereby

**ORDERED** that the Clerk of Court shall enter judgment in favor of plaintiff American Home Assurance Company in the amount of Fifty Thousand Dollars ($50,000.00), plus prejudgment interest computed as set forth above.

**SO ORDERED.**