OPINION OF THE COURT
Eileen A. Rakower, J.
Plaintiff Fireman’s Fund Insurance Co. as subrogor of Tischler Und Sohn (Tischler) commenced this action against Orient Overseas Container Line Ltd. (OOCL) for damages allegedly caused by OOCL’s late delivery of cargo from Europe to the United States owned by plaintiffs subrogee. Specifically, plaintiff alleges that Tischler had to remanufacture a portion of the shipment entrusted to OOCL in reliance on an allegedly negligent misrepresentation that the container in which Tischler’s goods were located had been stolen.
The following facts are not in dispute. Tischler is engaged in the business of selling, manufacturing and installing custom-made doors and windows. In or about February 9, 2000, plaintiff contracted with OOCL to carry containerized cargo of custom-máde windows and doors from Germany to New York. The terms of such contract are contained in OOCL’s bill of lading. OOCL subcontracted with a third-party ocean carrier (carrier) to transport the container and deliver it to New York. The vessel arrived in New York on February 17, 2000, but the container was not unloaded. When Tischler’s truck arrived to pick up the cargo on February 20, 2000, its goods could not be located and were presumed missing. On February 25, 2000, Tischler was informed that the container had been found, but after making two additional attempts to pick up its cargo, again the container could not be located. OOCL then caused a search for the container to begin at the terminal and on the vessel.
OOCL’s terminal representative Scott Stogner, by a letter faxed on February 23, 2000, notified Tischler that the container had not been located. Mr. Stogner again contacted Tischler by fax received on February 29, 2000, reporting the container still missing, and informed it that the carrier “has asked another twenty-four hours before officially reporting this container *13 stolen. All parties will be notified in the morning of February 29th if the box has been located or not.”
Tischler’s president, Timothy K. Carpenter, responded that day by faxed letter to OOCL, stating, in relevant part,
“It is astonishing that per your fax of today you are reporting the container missing again and advising that perhaps it has been stolen! I find this rather difficult to accept and equally difficult to believe. Was the container actually located last Friday or not? Your immediate attention to resolution of this matter and finding this container is imperative!”
Mr. Carpenter also informs OOCL that “should [Tischler] proceed with replacing these windows and doors and the container is subsequently found, we expect full reimbursement from OOCL for the replacements * * *.” He then asks for a prompt response.
Mr. Mike Casey from the freight forwarder Seajet Express, Inc., filed a claim with OOCL on March 3, 2000, and reiterated a prior conversation he had with OOCL’s representative Richard Ng.
“I refer to our conversation regarding the above container which has still not been located despite your records showing that it was physically discharged in New York * * *. The value of the cargo is very high and in the event that the container is not located there will be a significant monetary claim. At this point we have to assume that the container has been stolen and I assume that your office will contact the necessary authorities to commence a criminal investigation. Please confirm this íjC * * 5?
OOCL’s representative Richard Ng contacted the carrier on March 5, 2000, to provide them with a preliminary notice of claim. Ng states, “[p]lease accept this as formal notification of loss and we trust you will request the terminal to do a thorough search on the missing container.”
OOCL’s representative Debbie Bronis contacted Mr. Casey at Seajet Express on March 27, 2000 to confirm their March 24, 2000 phone conversation in which she informed him that the container was located and to arrange for its delivery.
The container had not been unloaded in New York City in February as originally thought, but remained on the vessel, first sailing to Japan and then California, before eventually being delivered. There is no claim of any damage to the cargo.
*14 OOCL moves for summary judgment on the ground that its contract with Tischler never promised delivery at any particular time and the cargo was indeed delivered. Specifically, OOCL alleges that its contract, embodied in the bill of lading, expressly disclaims liability due to any delay, and that its right to disclaim liability for delay and other consequential damages is provided for in the Carriage of Goods by Sea Act (46 USC Appendix § 1300 et seq. [COGSA]). Plaintiff cross-moves for summary judgment on the ground that, as a matter of law, OOCL is barred from disclaiming liability based on the doctrine of deviation at sea, embodied in COGSA, and that it is entitled to judgment based on OOCL’s alleged material misrepresentation that the container was stolen.*
“ ‘To grant summary judgment it must clearly appear that no material and triable issue of fact is presented (Di Menna & Sons v. City of New York, 301 N. Y. 118). This drastic remedy should not be granted where there is any doubt as to the existence of such issues (Braun v. Carey, 280 App. Div. 1019), or where the appeal is “arguable” (Barrett v. Jacobs, 255 N. Y. 520, 522); “issue-finding, rather than issue-determination, is the key to the procedure” (Esteve v. Aad, 271 App. Div. 725, 727).’ (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404.)” (Ramsammy v City of New York, 216 AD2d 234, 236-237 [1st Dept 1995].)
In addition, “[t]he party opposing the [summary judgment] motion must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which the opposing claim rests.” (Frank Corp. v Federal Ins. Co., 70 NY2d 966, 967 [1988].) Bald, conclusory allegations, even if believable, are not enough. (Id.; Ehrlich v American Moninger Greenhouse Mfg. Corp., 26 NY2d 255 [1970]; Edison Stone Corp. v 42nd St. Dev. Corp., 145 AD2d 249, 251-252 [1st Dept 1989].)
In support of its motion for summary judgment, OOCL argues that plaintiff’s claim is governed exclusively by COGSA *15 and the express terms of the bill of lading, which limit OOCL’s liability. OOCL’s bill of lading explicitly states:
“The Carrier does not undertake that the Goods shall arrive at the Port of Discharge or Place of Delivery at any particular time or to meet any particular market or use * * * the Carrier shall in no circumstance be liable for any indirect or consequential loss or damage caused by delay * * * Save as otherwise provided herein, the Carrier shall in no circumstances be liable for direct or indirect or consequential loss or damage arising from any other cause.”
Further, the bill of lading provides that its terms may only be altered in writing by the carrier, and that no agent of the carrier shall have the power to waive or vary any of the terms, unless such waiver or variation is in writing and authorized in writing by the carrier.
Plaintiff concedes that COGSA governs plaintiffs claim and that COGSA permits an ocean carrier to disclaim liability for damages resulting from delay in delivery of cargo. (46 USC Appendix § 1300 et seq.) Plaintiff does not dispute the fact that the bill of lading explicitly provides that OOCL does not promise delivery on a specific date or to meet any other deadline.
However, plaintiff argues that OOCL is barred from disclaiming liability for damages resulting from delay in delivery according to COGSA, based on the doctrine of deviation at sea. COGSA provides specifically that:
“Any deviation in saving or attempting to save life or property at sea, or any reasonable deviation shall not be deemed to be an infringement or breach of this chapter or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom: Provided, however, That if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable” (46 USC Appendix § 1304 [4] [emphasis in original]).
‘Tinder the doctrine of unreasonable deviation, where a carrier’s performance in shipping goods deviates unreasonably from the terms agreed to in a bill of lading, the carrier is deprived of all limitations on liability on the ground that such deviations ousted the contract of carriage and made the carrier fully responsible for the cargo as an insurer. See General Elec. *16 Co. Int’l Sales Div. v. S.S. Nancy Lykes, 706 F.2d 80, 87 (2d Cir.1983). A deviation is unreasonable where ‘in the absence of significant countervailing factors, the deviation substantially increases the exposure of cargo to foreseeable danger that would have been avoided had no deviation occurred.’ (SNC S.L.B. v. M/V Newark Bay, 111 F.3d 243, 248 (2d Cir.1997). The deviation doctrine has been limited to two situations: geographic deviation from the route of the voyage and unauthorized on-deck stowage. See Sedeo, Inc. v. S.S. Strathewe, 800 F.2d 27, 31 (2d Cir.1986).” (American Home Assur. v M/V TABUK, 170 F Supp 2d 431, 433 [SD NY 2001].) A carrier’s unreasonable deviation must be both voluntary and intentional. “[T]he doctrine of deviation is applicable to the ‘carrier’s voluntary action in unjustifiably deviating’ when the deviation has ‘so changed the essence of the agreement as to effect its abrogation.’ ” (Sedco, Inc. v S.S. Strathewe, 800 F2d 27, 32 [2d Cir 1986].)
Here, there is no allegation that there was a voluntary deviation in the ship’s route. Rather, plaintiff’s cargo was inadvertently left on the vessel and carried along on its route until it was eventually discovered and delivered to plaintiff. It is obvious from the correspondence between Tischler, OOCL, and the freight forwarder, Seajet Express, that OOCL had no intention of diverting the cargo, and indeed was actively searching for it. Thus, there was no unreasonable deviation within the meaning of COGS A.
Plaintiff also claims that as a result of its good faith belief that the container had been stolen and its reliance on OOCL’s statements to that effect, it had to reproduce its custom-made cargo, and was thus damaged. Plaintiff’s cross motion for summary judgment is predicated on the alleged material misrepresentation made by OOCL in its February 29, 2000 fax that the subject cargo container was stolen. Plaintiff claims that OOCL is attempting to enforce provisions in its bill of lading to shield itself from liability for delay in the delivery of the cargo, and that OOCL should be equitably estopped from raising that claim.
. A cause of action in negligence “cannot be the basis of liability where [defendant’s] sole legal duties to [plaintiff! arose entirely out of contract. This is so * * * whether resort is had to federal maritime law, see East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), or to New York law, see Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 *17 N.E.2d 190 (1987).” (International Ore & Fertilizer Corp. v SGS Control Servs., Inc., 38 F3d 1279, 1283 [2d Cir 1994].) A breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. (Meyers v Waverly Fabrics, 65 NY2d 75, 80 n 2 [1985].) The legal duty allegedly breached must spring from circumstances extraneous to, and not constituting elements of the contract, although it may be connected with and depend upon the contract. (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382 [1987]; Non-Linear Trading Co. v Braddis Assoc., 243 AD2d 107, 115-116 [1st Dept 1998].) “Merely charging a breach of a ‘duty of due care’, employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim.” (Braddis at 116.)
Here, the parties’ agreement was for the transport and delivery of goods, and the parties’ legal duties and correlative responsibilities arose entirely from that agreement. The court notes that the bill of lading, while stating that it does not guarantee delivery by any particular date, specifically disclaims any loss “in any circumstance” including “indirect or consequential loss or damage caused by delay.” Goods that are not delivered, for whatever reason, are covered by COGSA, which limits the liability of the carrier where a value for the goods shipped is not declared in the bill of lading. (46 USC Appendix § 1304 [5].) Here, declared value is left blank on the bill of lading, and COGSA’s limited liability would govern if the goods were never found. Indeed, even this eventuality is addressed within the four corners of the agreement. Finally, in an April 3, 2000 letter to OOCL, Tischler concedes “[w]e have incurred extensive costs due to this delay” (emphasis added), as opposed to some alleged misrepresentation. Plaintiff has failed to identify an independent duty on which to base its tort claim. Plaintiff, by proceeding on a tort theory of liability, seeks to circumvent the provisions of the contract to which it was a party. Plaintiff’s causes of action laying in tort are dismissed.
Even if this court were to entertain plaintiff’s tort claim, the alleged “misrepresentation” — a statement contained in a February 29, 2000 fax stating that the carrier “has asked another twenty-four hours before officially reporting this container stolen” — would be insufficient to support a claim for negligent misrepresentation. Black’s Law Dictionary defines a misrepresentation as
“Any manifestation by words or other conduct by one person to another that, under the circum *18 stances, amounts to an assertion not in accordance with the facts. An untrue statement of fact. An incorrect or false representation. That which, if accepted, leads the mind to an apprehension of a condition other and different from that which exists. Colloquially it is understood to mean a statement made to deceive or mislead.” (Black’s Law Dictionary 903 [5th ed 1979].)
In order to be liable for negligent misrepresentation, a party must make a representation with (1) awareness that the statement was to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the plaintiffs and evincing defendants’ awareness of their reliance. (Parrott v Coopers & Lybrand, 95 NY2d 479 [2000].)
Here, the statement that the carrier was requesting 24 hours before taking further action was not alleged to be false. Further, the only reliance on that statement that is foreseeable is that there would be a follow-up in 24 hours to determine the carrier’s ultimate action.
Indeed, taken in the context of the other correspondence attached to the parties’ submissions to this court, including letters and faxes, as well as the affidavits of the parties’ representatives, there is nothing to indicate that OOCL definitively told Tischler that its container was stolen. Plaintiff responded to the February 29, 2000 communication by stating “[i]t is astonishing that per your fax of today you are reporting the container is missing again and advising that perhaps it has been stolen.” (Emphasis added.) Plaintiff closed by requesting a prompt response. No confirmation regarding the status of the cargo was alleged to have been forthcoming. Any reference to the status of the cargo remained equivocal throughout the communications until April 3, 2000, when plaintiff acknowledged that the container was “located in Japan and is currently on a ship due into Oakland, California on April 3.”
Wherefore, it is hereby ordered that defendant Orient Overseas Container Line Ltd.’s motion for summary judgment is granted and plaintiffs’ case against it dismissed, and it is further ordered that plaintiff Fireman’s Fund Insurance Co.’s cross motion for summary judgment is denied and its case dismissed, and it is further ordered that all other relief requested herein is denied.

 Plaintiff submits a memorandum of law with exhibits in support of its motion for summary judgment, as well as an affidavit of Susan Carpenter, an employee of Tischler attached hereto. Plaintiff did not serve or file a notice of motion. Nevertheless, it was the understanding of the parties that plaintiff so moved, and defendant has replied to plaintiff’s cross motion. Thus the court recognizes plaintiffs submissions as a cross motion for summary judgment. (CPLR 3026.)