11-26-cv
DVL, Inc. v. Niagara Mohawk Power Corp.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 2nd day of August, two thousand twelve.

PRESENT: GUIDO CALABRESI,
GERARD E. LYNCH,
RAYMOND J. LOHIER, JR.,
*Circuit Judges.*

_____

DVL, INC.,

*Plaintiff-Appellant,*

v.                                                                11-26-cv

NIAGARA MOHAWK POWER
CORPORATION, NATIONAL GRID USA,
NATIONAL GRID, NATIONAL GRID
USA SERVICE COMPANY, INC.,
GENERAL ELECTRIC COMPANY,

*Defendants-Appellees.*[*]

_____

FOR APPELLANT:                               DAVID A. ENGEL (Shannan C.

_____

[*] The Clerk of Court is respectfully requested to amend the caption as set forth above.

Krasnokutski, *on the brief*), Nolan & Heller, LLP, Albany, NY.

FOR APPELLEE GENERAL ELECTRIC COMPANY:

ARTHUR J. SIEGEL (Kimberlee S. Parker, *on the brief*), Bond, Schoeneck & King, PLLC, Albany, NY.

FOR APPELLEES NIAGARA MOHAWK POWER CORPORATION, NATIONAL GRID USA, NATIONAL GRID, and NATIONAL GRID USA SERVICE COMPANY, INC.:

KARIM A. ABDULLA, Hiscock & Barclay, LLP, Buffalo, NY.

Appeal from the judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Plaintiff-appellant DVL, Inc. ("DVL") is a commercial real estate owner that acquired a piece of property in Fort Edward, New York (the "DVL Site" or "Site") in 2002. At the time of acquisition, DVL was unaware that soil at the Site contained quantities of polychlorinated biphenyls ("PCBs"). In 2003, DVL learned that the New York State Department of Environmental Conservation ("DEC") was concerned about PCB contamination at the DVL Site. A preliminary site assessment conducted by an engineering firm retained by DEC from 2003 to 2004 revealed the presence of several types of PCBs in soil at the Site. DVL subsequently hired an environmental consulting firm to investigate and remediate the contamination at the Site, thereby incurring substantial expenses.

On October 11, 2007, DVL initiated this action against defendants-appellees Niagara Mohawk Power Corporation, National Grid USA, National Grid, and National

2

Grid USA Service Company, Inc. (collectively, "Niagara"), and General Electric

Company ("GE"), alleging that they had disposed of PCBs at the DVL Site and were

therefore liable for DVL's clean-up costs and damages. DVL's complaint asserts claims

under the Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), 42 U.S.C. § 9601 et seq., and the New York State common law of

indemnification, trespass, and nuisance. On December 6, 2010, the district court denied

DVL's motion for partial summary judgment as to liability, granted Niagara's and GE's

motions for summary judgment, and granted GE's cross-motion to strike certain

undisclosed expert testimony. See DVL, Inc. v. Gen. Elec. Co., 811 F. Supp. 2d 579

(N.D.N.Y. 2010). We affirm for substantially the reasons set forth in the district court's

thorough and well-reasoned opinion. We assume the parties' familiarity with the

underlying facts.

## I. Motion to Strike Undisclosed Expert Testimony

In support of its motion for partial summary judgment, DVL submitted a

declaration from James Ludlam, who worked as a DEC engineer from 1977 to 2008.

According to his declaration, Ludlam worked on hazardous waste disposal sites

throughout New York State during his career, including several sites containing PCBs for

which either Niagara or GE were responsible. Ludlam also supervised investigation and

remedial activities at the DVL Site. As the district court noted, the declaration details

Ludlam's "education, expertise, and qualifications, and ultimately states conclusions that

the presence of certain Aroclor types found on the DVL Site indicate that they were of

3

GE and Niagara Mohawk origin." Id. at 589.[1]  DVL also filed a supplemental declaration by Ludlam in support of its opposition to the defendants' summary judgment motions, which contained similar testimony.

GE filed a motion to strike Ludlam's declarations on the ground that they contained expert testimony that had not been disclosed to the defense in discovery.  The district court granted the motion to strike in large part, finding that the declarations consisted mainly of expert testimony.  See DVL, 811 F. Supp. 2d at 590 ("Many of the 'observations' and essentially all of the 'conclusions' that Ludlam offers are not rationally based on his first-hand perceptions, but are rather based on scientific, technical, or specialized knowledge.").  However, the court declined to strike certain portions of Ludlam's declarations that contained non-expert testimony.  See id. at 591 (refusing to strike Ludlam's first-hand observation of the migration of water from the GE plant to the DVL Site and his testimony based on his "familiarity through his professional experience with GE's historical disposal practices").

We review a district court's evidentiary rulings for abuse of discretion.  See United States v. Garcia, 413 F.3d 201, 210 (2d Cir. 2005); see also Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141-43 (1997).  As we have previously noted, Federal Rule of Evidence 701 was amended in 2001 "to provide that testimony cannot be received as lay opinion if it is based on scientific, technical, or other specialized knowledge."  Garcia,

---

[1] Different types of PCBs are `referred to by "Aroclor" numbers, such as "Aroclor 1260."

413 F.3d at 215 (citing Fed. R. Evid. 701(c)).[2]  The purpose of Rule 701(c) is to "prevent

a party from conflating expert and lay opinion testimony thereby conferring an aura of

expertise on a witness without satisfying the reliability standard for expert testimony set

forth in Rule 702 and the pre-trial disclosure requirements set forth" in Federal Rule of

Civil Procedure 26.  Id.; see also Bank of China v. NBM LLC, 359 F.3d 171, 181 (2d Cir.

2004).  Under Rule 26, a party must "disclose to the other parties the identity of any

witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703,

or 705," and must make such disclosures "at the times and in the sequence that the court

orders."  Fed. R. Civ. P. 26(a)(2)(A) & (D).

DVL does not dispute that it never designated Ludlam as an expert.  Rather, DVL

argues that the district court erred by characterizing the bulk of Ludlam's testimony as

expert testimony, rather than as lay opinion testimony.  We, however, see no error in the

district court's conclusion that Ludlam relied on technical and scientific knowledge in

making most of the observations and conclusions in the declarations.  For example, his

conclusion that the flow of water from GE's manufacturing plant to the DVL Site "would

have inevitably caused the migration of PCB contamination to the present DVL Site,"

could not have been based on the "reasoning processes familiar to the average person in

everyday life," Garcia, 413 F.3d at 216, since ordinary lay persons would have no

knowledge of the conditions under which chemical contamination of soil can migrate

_____

[2] Rule 701 provides in full that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

from site to site.[3] Rather, the persuasiveness of Ludlam's conclusions could only derive from specialized knowledge regarding the chemical properties of PCBs that Ludlam had developed over several decades of working on hazardous waste clean-up projects.

DVL also argues that, even if Ludlam's testimony was properly characterized as expert testimony, the district court erred by striking it. Federal Rule of Civil Procedure 37(c) provides that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Although DVL does not suggest that its failure to designate Ludlam as an expert was substantially justified, it does claim that its failure was harmless because it identified Ludlam as a possible lay witness pursuant to Rule 26(a)(1). See Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring parties to disclose the identity of "each individual likely to have discoverable information . . . along with the subjects of that information").

However, as the district court noted, DVL's identification of Ludlam in its initial disclosures was "insufficient to put Defendants on notice that Ludlam, one among many

_____

[3] DVL relies heavily upon the Third Circuit's decision in Wilburn v. Maritrans GP Inc., which held that a "lay witness with first hand knowledge can offer an opinion akin to expert testimony in most cases, so long as the trial judge determines that the witness possesses sufficient and relevant specialized knowledge or experience to offer the opinion." 139 F.3d 350, 356 (3d Cir. 1998) (internal quotation marks omitted). However, as GE notes, that decision was abrogated by the amendment of Rule 701 in 2000, under which "a witness'[s] testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701 advisory committee's note. Under the current version of Rule 701, if an "opinion rests 'in any way' upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." Garcia, 413 F.3d at 215 (quoting 4 Weinstein's Federal Evidence § 701.03[1]).

potential fact witnesses, would testify as to conclusions drawn separately and distinct from those drawn by DEC" in the preliminary site assessment report.  DVL, 811 F. Supp. 2d at 591.  Thus, "[b]ecause DVL did not properly disclose Ludlam as an expert and only provided his Declarations after the close of discovery, GE and Niagra Mohawk did not have the opportunity to anticipate, challenge, or counter Ludlam's statements, assessments, methods, or conclusions."  Id. (footnote omitted).  Accordingly, the district court did not abuse its discretion in determining that DVL's failure to designate Ludlam as an expert caused the defendants prejudice.

## II.  Summary Judgment

We review de novo a district court's award of summary judgment, "construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor."  Kuebel v. Black & Decker Inc., 643 F.3d 352, 358 (2d Cir. 2011).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist., 673 F.3d 84, 94 (2d Cir. 2012) (internal quotation marks omitted).  If a party's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

### A.  CERCLA Claims

Under CERCLA, "property owners are strictly liable for the hazardous materials

7

on their property, regardless of whether or not they deposited them there." Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 (2d Cir. 2010). However, CERCLA allows owners of polluted property to seek reimbursement for remedial expenses from another "potentially responsible party" ("PRP"). Id.; see also ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351, 356 (2d Cir. 1997). In this case, DVL claims that the defendants qualify as PRPs because they "arranged for" the disposal of hazardous waste at the DVL Site. 42 U.S.C. § 9607(a)(3) (imposing liability upon parties who "by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person . . . at any facility . . . owned or operated by another party"); see also Burlington N. & Sante Fe Ry. Co. v. United States, 556 U.S. 599, 610 (2009) (noting that "an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance").[4]

As we have noted, "CERCLA liability may be inferred from the totality of the circumstances as opposed to direct evidence." Niagara Mohawk, 596 F.3d at 136. Indeed, "when determining CERCLA liability, 'there is nothing objectionable in basing findings solely on circumstantial evidence, especially where the passage of time has made direct evidence difficult or impossible to obtain.'" Id. at 131 (quoting Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc., 240 F.3d 534, 547 (6th

---

[4] CERCLA defines the term "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

8

Cir. 2001)). In addition, a party seeking contribution under CERCLA "need not establish the precise amount of hazardous material discharged or prove with certainty that a PRP defendant discharged the hazardous material to get their CERCLA claims past the summary judgment stage." Id. at 132. Nonetheless, a CERCLA plaintiff must still "establish that the defendants qualify as PRPs under the statute and must demonstrate that it is probable that the defendants discharged hazardous material." Id.; see also United States v. Alcan Aluminum Corp., 990 F.2d 711, 721 (2d Cir. 1993) (holding that a CERCLA plaintiff asserting an "arranger" claim must show, inter alia, "that the defendant generated hazardous waste at the clean-up site").

The district court held that DVL failed to adduce sufficient evidence that the defendants disposed or arranged for the disposal of PCBs at the DVL Site, and accordingly denied DVL's motion for partial summary judgment as to liability and granted the defendants' motions for summary judgment. We agree with the district court's analysis, and therefore affirm.

With respect to GE, DVL argues on appeal that it presented various pieces of circumstantial evidence which, taken together, establish that GE arranged for the disposal of PCBs at the DVL Site. However, much of this evidence concerns activities with no connection to the DVL Site. As GE notes, its activities at its Fort Edward manufacturing plant, and the presence of PCB contamination at that site, do not constitute "evidence that GE disposed of PCBs at the DVL Site." Appellee Gen. Elec. Co. Br. ("GE Br.") at 8 (emphasis omitted). Similarly, evidence that GE disposed of PCBs at other sites in the region "cannot substitute for evidence of its activities in relation to the property involved in this dispute." DVL, 811 F. Supp. 2d at 598.

9

DVL did submit a declaration by Dennis Prevost, who claimed that he observed electrical capacitors at the DVL Site as a child. However, as the district court noted, "Prevost's accounts do not identify GE as the source of the material that he saw," which makes any connection between GE and the capacitors speculative. Id. Likewise, in the absence of expert testimony or other evidence that the water contained PCBs, Ludlam's observation of water flowing from GE's manufacturing plant to the DVL Site "is insufficient to establish GE as a PRP." Id.

Finally, DVL points to evidence that the PCB Aroclor types used and disposed at the GE Fort Edward site matched those at the DVL Site. However, as GE notes, the record is bereft of evidence – such as expert testimony – that would tie the PCBs at the DVL Site to "a GE product as opposed to the many non-GE products using these aroclors." GE Br. at 10. Without such evidence, any inference that GE was responsible for the PCBs at the DVL Site is too speculative to create a genuine issue of material fact. See DVL, 811 F. Supp. 2d at 599; cf. Niagara Mohawk, 596 F.3d at 135 (holding that there was a dispute of material fact for purposes of CERCLA liability where the plaintiff introduced evidence, including expert testimony, showing that "hazardous materials . . . originated at the [defendant's] Plant" and then were carried by a creek to the plaintiff's property).

DVL's evidence with respect to Niagara is insufficient for similar reasons. Niagara provides electrical service in the Fort Edward area, and at one time employed "commonly used" distribution line transformers that contained Aroclor 1260, which was also found at the DVL Site. DVL, 811 F. Supp. 2d at 584-85, 586. The district court held

10

that the evidence in the record "does not suggest any Niagra Mohawk transformers went to the DVL Site," although it did not "foreclose that possibility." Id. at 599.

On appeal, DVL challenges that holding by pointing to Prevost's statement that as a boy he observed "large 'bucket' objects" at the DVL Site which he understood to be electrical transformers. However, as Prevost clarified in his supplemental declaration, these "objects did *not* bear Niagara Mohawk's name, initials or any other symbols or logos indicative of Niagara Mohawk ownership or sourcing." The district court therefore did not err in concluding that "Prevost's testimony does not link the Niagra Mohawk Defendants to the DVL Site." Id. at 599.

Similarly, as the district court noted, Ludlam had "no personal knowledge of [Niagara] transformers being disposed on the DVL Site" and the DEC investigation that he supervised "did not suggest [Niagara] was a responsible party, nor did it uncover any debris that was later linked to [Niagara]." Id. at 600. In the absence of less speculative direct or circumstantial evidence linking Niagara to the DVL Site, or admissible expert testimony explaining why the Aroclor 1260 at the DVL Site was likely put there by Niagara, DVL's evidence that Niagara arranged to dispose of Aroclor 1260 at the DVL Site is insufficient to create an issue of material fact for summary judgment. See Anderson, 477 U.S. at 249-50 (noting that "summary judgment may be granted" where a party's evidence "is merely colorable").

**B. State Law Claims**

DVL argues that the district court erred in holding its state law indemnification claim preempted insofar as DVL sought the same damages covered by its CERCLA claim. However, the district court also held that the indemnification claim failed as a

11

matter of law because DVL was "unable to establish Defendant's culpability." DVL, 811 F. Supp. 2d at 596. DVL has not appealed that holding, which is dispositive of its indemnification claim, and in any event any such appeal would be futile given our discussion of DVL's CERCLA claim. We therefore need not – and do not – address DVL's preemption arguments.

DVL also appeals the district court's dismissal of its trespass and nuisance claims, arguing that the court erred by determining that those claims were time-barred. However, as with the indemnification claim, the district court held that the trespass and nuisance "claims fail as a matter of law because, as explained, DVL cannot establish the culpability of any Defendant for contaminating the DVL Site." Id. at 600. DVL has not challenged that holding, or otherwise explained why the district court's analysis of DVL's CERCLA claims is not dispositive of its trespass and nuisance claims. We therefore affirm the district court's dismissal of these claims, and do not reach DVL's statute of limitations arguments.

## III. Conclusion

We have considered all of the plaintiff's arguments in light of all of the evidence in the record and find them to be without merit. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
