**ENGINEERED ARRESTING SYSTEMS CORPORATION,**
Plaintiff,

v.

**M/V SAUDI HOFUF her engines, boilers and tackle in rem; and National Shipping Company of Saudi Arabia,** Defendants.

No. 12 Civ. 6420(AT).

United States District Court,
S.D. New York.

Signed Sept. 5, 2014.

James A, Saville, Jr., Esq., Lauren E. Komsa, Esq., Hill Rivkins LLP, Attorneys for Plaintiff, Engineered Arresting Systems Corporation.

James L, Ross, Esq., Freehill Hogan & Mahar, LLP, Attorneys for Defendant, National Shipping Company of Saudi Arabia.

### MEMORANDUM AND ORDER

ANALISA TORRES, District Judge:

In this admiralty and maritime action, Defendant, National Shipping Company of Saudi Arabia ("NSCSA") seeks partial summary judgment holding that its potential liability to Plaintiff, Engineered Arresting Systems Corporation ("EAS"), is limited to $3,000, For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

This action arises out of damage to a shipment of six trailers containing Portarrest P–IV Mobile Aircraft Arresting Systems (the "Shipment"),[1] which were sold by EAS to the Indian government and transported by NSCSA, EAS retained OPT Project Transport, Inc. ("OPT"), a licensed freight forwarder, to arrange the ocean transport of the Shipment from Baltimore, Maryland to Mumbai, India, Def. 56.1 ¶¶ 4–5, ECF No. 19; Pl. 56.1 ¶¶ 4–5, ECF No. 28, OPT, acting on EAS's behalf, entered into a bill of lading contract of carriage (the "Bill of Lading") with NSCSA for the ocean transportation of the Shipment aboard the SAUDI HOFUF. Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6; *see also* Def., 56.1 Ex. 3 (Bill of Lading), ECF No, 19–6.

The Bill of Lading states that the contract is subject to the Carriage of Goods by Sea Act of 1936 ("COGSA"), reprinted in 46 U.S.C. § 30701 note (previously codified at 46 U.S.C. app. § 1300 *et seq.*), Def. 56.1 Ex. 3 (Bill of Lading) ¶ 2(b), The Bill of Lading includes a package limitation clause stating:

> IN TRADES TO OR FROM THE UNITED STATES the Carrier's liability for any loss or damage of Goods exceeding in value the equivalent of $500 lawful money of the United States per package, or in the case of Goods not shipped in packages, per customary freight unit (CFU), shall be limited to COGSA's $500 per Package or per CFU. If the Goods are unpackaged unless the nature and value of such Goods have been declared by the Shipper before

shipment, inserted in the Bill of Lading in the overleaf, and an ad valorem freight rate paid to the Carrier. In such instances, the Carrier's liability shall not exceed the declared value and any partial loss or damage of Goods shall be pro rata on the basis of such declared value.[2]

*Id.* ¶ 9(a). The Bill of Lading also contains a provision regarding the stowage of cargo, which, in relevant part, provides:

> Goods whether stowed in a Container or not may be carried on or under deck without notice to the Merchant. Such Goods (other than livestock) whether carried on deck or under deck shall participate in general average and shall be deemed to be within the definition of Goods for the purposes of the Hague Rules or the Hague Visby Rules or COGSA, as the case may be.

*Id.* ¶ 10(b). At booking, NSCSA's agent did not discuss on or below-deck stowage with OPT, nor did OPT request that NSCSA stow the Shipment below deck, Def. 56.1. ¶¶ 11, 17; Pl. 56.1. ¶¶ 11, 17. OPT had booked prior shipments with NSCSA over a period of seven years, Def. 56.1, ¶ 16; Pl. 56.1. ¶ 16.

During the voyage from Baltimore to Mumbai, which took place in July 2011, the Shipment was stowed on Deck 4 of the SAUDI HOFUF, approximately forty to forty-five feet above sea level. Def. 56, 1 ¶¶ 3, 30; Pl. 56.1 ¶¶ 3, 30. The SAUDI HOFUF is a RoRo vessel specially designed to stow and secure RoRo cargoes such as vehicles, automobiles, RoRo containers, and other cargo that can be "rolled on" and "rolled off" of the vessel when

---

1. The P–IV Mobile Aircraft Arresting System is a brake system used to rapidly decelerate an aircraft on both permanent and temporary runways, including on runways used at main air bases, forward operating air bases, and emergency or temporary air strips, Ross Affirm. ¶ 3, ECF No. 29–1.

2. "Goods" is defined in the Bill of Lading as "the whole or any part of the cargo received from the Merchant, including RORO Cargo and any Container not supplied by or on behalf of the Carrier." Def. 56.1 Ex. 3 (Bill of Lading) ¶ 1.

loading or discharging at port. Def. 56, 1 ¶¶ 7–9, 28, 31, 41–47; Pl. 56.1 ¶¶ 7–9, 28, 31, 41–47. The Shipment was a RoRo cargo and consisted of six trailers, each having wheels and weighing approximately 9.3 tons. Def. 56.1 ¶¶ 9, 14; Pl. 56.1 ¶¶ 9, 14. The items allegedly damaged during the voyage-P—IV Mobile Aircraft Arresting Systems—were designed to operate in varied environmental conditions. Def. 56.1 ¶ 15; Pl. 56.1 ¶ 15; Ross Affirm. ¶ 4, ECF No. 29–1. However, according to Thomas H, Ross, EAS's Marketing Regional Director, the Shipment was not designed for repeated and prolonged exposure to seawater. Pl. 56.1 ¶ 15; Ross Affirm. ¶ 4. Nevio Maraschin, the Chief Officer on the SAUDI HOFUF and an employee of NSCSA, testified that he had no reservations about stowing the Shipment on deck and observed no damage to the Shipment. Def. 56, 1 ¶ 45; Maraschin Tr. 86:1–87:12, ECF No. 19–2.

NSCSA submits deposition testimony and declarations in support of its claim that it is customary, both between EAS and NSCSA and in the port of Baltimore generally, for RoRo cargoes such as the Shipment to be stored on the deck of specially designed RoRo vessels such as the SAUDI HOFUF. Specifically, Maraschin, who served for nine years on NSCSA RoRo vessels and for at least five years with another RoRo carrier and who served as Chief Officer on the SAUDI HOFUF for the July 2011 voyage from Baltimore to Mumbai, testified, based on his personal experience, that RoRo vessels regularly carry RoRo cargo such as the Shipment on deck. Def. 56.1 ¶¶ 18–25; Pl. 56.1 ¶¶ 18–25; Maraschin Tr. 7:11–11:20, 14:8–22, 19:19–23:5, NSCSA also provides the declaration of Shabbir Ahmed, an Insurance and Claims Manager who has been employed by NSCSA for twenty-seven years and served as a Port Captain for the past eleven years. Ahmed Decl. ¶¶ 5–6, ECF No, 20. Ahmed attests that "on every

voyage where [he] attended the loading of NSCSA RoRo vessels," including those in the port of Baltimore, RoRo cargoes such as the Shipment were stowed and carried on deck, Id. ¶¶ 7, 24–26. In addition, NSCSA submits the declaration of Alok Praharaj, a marine surveyor employed by American Marine & Cargo, Inc., who has an "associate science degree," graduated from the Merchant Marine Academy, T.S. Rajendra, in Mumbai, India, and passed the Master Mariner Examination offered by the government of India. Praharaj Decl. ¶¶ 1–6, ECF No. 21. Praharaj has worked as a surveyor in the port of Baltimore for twenty-seven years and has boarded an estimated 972 RoRo vessels in the port of Baltimore. Id. ¶¶ 6–16. In his declaration, Praharaj asserts that all of the RoRo ships operated by NSCSA, as well as two other carrier lines, Wallenius Wilhelmsen Lines and Atlantic Container Lines, "have carried, and continue to carry, RoRo cargoes on deck on a regular basis loaded at the port of Baltimore," Id. ¶¶ 12–13. Praharaj also states that "RoRo vessels such as the SAUDI HOFUF, are specially designed for securing RoRo cargoes on deck and routinely carry RoRo cargoes on deck," Id. ¶¶ 15. EAS denies that such a custom or practice exists, Pl. 56.1 ¶ 47, and submits the affirmation of Thomas H. Ross, the Marketing Regional Director of EAS, who attests that "to the best of [his] knowledge, no other shipment of P–IV Mobile Aircraft Arresting System has been carried on-deck." Ross Affirm. ¶¶ 1, 5. Ross states that a shipment of similar trailers was stored below deck by NSCSA on another ship, the SAUDI DI-RIYAH, shortly after the Shipment was transported. Id. ¶ 5.

## DISCUSSION

### I. *Standard of Review*

Summary judgment is appropriate where the court is satisfied "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[A]t the summary judgment stage the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding the motion, the court views the record in the light most favorable to the non-moving party, *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 61 (2d Cir.2002). However, the opposing party may not avoid summary judgment by relying solely on conclusory allegations or denials that are unsupported by facts. *Amaker v. Foley,* 274 F.3d 677, 680–81 (2d Cir.2001).

## II. *Application*

The parties do not dispute that the Bill of Lading in this case is governed by COGSA. Without admitting liability, NSCSA seeks a determination that its maximum potential liability for the six packages comprising the Shipment is limited to $3,000 (*i.e.,* $500 per package) under both the package limitation clause in the Bill of Lading and the package limitation provision in COGSA, 46 U.S.C. § 30701 note § 4(5) (previously codified at 46 U.S.C. app. § 1304(5)).[3] EAS contends that NSCSA is not entitled to this limitation because NSCSA's on-deck stowage of the Shipment constitutes an unreasonable deviation from the Bill of Lading.

### A. On–Deck Stowage Was Not a Deviation from the Bill of Lading

Notwithstanding the stowage option clause in the Bill of Lading stating that "Goods whether stowed in a Container or not may be carried on or under deck without notice to the Merchant," Def. 56.1 Ex. 3 (Bill of Lading) ¶ 10(b), EAS contends that NSCSA deviated from the Bill of Lading by stowing the Shipment on deck, because there was no notice and no custom in Baltimore allowing for on-deck stowage.

The concept of deviation has a long history in maritime law and is defined as a "voluntary departure without necessity, or any reasonable cause, from the regular and usual course of the ship insured." *Constable v. Nat'l S.S. Co.,* 154 U.S. 51, 66, 14 S.Ct. 1062, 38 L.Ed. 903 (1894) (citations and internal quotation marks omitted). Under this doctrine, a defendant may not avail itself of a limitations provision where it is shown that the defendant materially deviated from the terms of its contract. *In re Complaint of Maritima Aragua, S.A.,* 89 Civ. 5430, 1992 WL 42256, at *2 (S.D.N.Y. Feb. 21, 1992). Although the doctrine initially prohibited only geographic departures, it has been extended to prohibit the unauthorized stowage of cargo on deck. *See Sedco, Inc. v. S.S. Strathewe,* 800 F.2d 27, 31 (2d Cir.1986) ("[H]aving accepted the doctrine [of deviation], we have limited it to two situations: geographic deviation and unauthorized on-deck stowage ('quasi-deviation').").

---

**3.** The COGSA package limitation provision states as follows: "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading, This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier." 46 U.S.C. § 30701 note § 4(5).

■ Courts have recognized that a bill of lading is "clean," meaning that it requires below-deck stowage unless the contract expressly provides for on-deck stowage or port custom allows for on-deck stowage. *ETS Gustave Brunet, S.A. v. M.V. Nedlloyd Rosario,* 929 F.Supp. 694, 703 (S.D.N.Y.1996) (citations omitted). This rule has been held to prohibit on-deck stowage even in cases where, as here, a bill of lading contained a clause giving a carrier the option to stow goods either on deck or below deck without notice to the shipper, *See, e.g., St. Johns N.F. Shipping Corp. v. S.A. Companhia Geral Commercial do Rio de Janeiro,* 263 U.S. 119, 124, 44 S.Ct. 30, 68 L.Ed. 201 (1923); *Encyclopaedia Britannica, Inc. v. SS Hong Kong Producer,* 422 F.2d 7, 11, 15–18 (2d Cir. 1969), *cert. denied,* 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970); *ETS Gustave Brunet,* 929 F.Supp. at 704. Although there is a presumption that a bill of lading containing a stowage option clause is clean and imports below-deck stowage, this presumption can be rebutted. *See Am. Home Assurance Co. v. M.V. TABUK,* 45 Fed. Appx. 12, 14 (2d Cir.2002) (finding that there was no breach of a clean bill of lading where contract contained an option permitting the carrier to stow cargo on deck and the shipping agent agreed to either on-deck or raider-deck stowage) (citation omitted). Even in the absence of actual notice, a stowage option clause is enforceable where a party has notice through prior custom and practice that on-deck stowage is allowed. *English Elec. Valve Co., Ltd. v. M/V Hoegh Mallard,* 814 F.2d 84, 89 (2d Cir.1987) ("[A]bsent an agreement or an established custom from which consent of the shipper for on-deck stowage may be imputed, a clean bill of lading imports stowage below deck.") (citation and internal quotation marks omitted); *see also Alt. Glass Supplies v. M/V NOMZI,* 97 Civ. 4387, 1999 WL 2870, at *4 (S.D.N.Y. Jan. 4, 1999) (holding that stowage option clause was enforceable where the defendant's "custom and practice" was to allow on-deck stowage for the type of package in question).

■ In support of its motion, NSCSA submits evidence that it is customary, both in its past practices with EAS and in the port of Baltimore, for RoRo cargoes such as the Shipment to be stowed above deck on RoRo vessels such as the SAUDI HOFUF, Def. Mem. 12–13. NSCSA points to the testimony of Maraschin, who stated that in his past employment RoRo vessels carried cargo such as the Shipment on deck in every loading he oversaw and that there was nothing unusual about such stowage. Def. 56.1 ¶¶ 18–25; Pl. 56.1 ¶¶ 18–25; Maraschin Tr. 7:11–11:20, 14:8–22, 19:19–23:5. NSCSA also submits the declaration of Ahmed, who attests that on every loading of an NSCSA RoRo vessel he attended, including those in the port of Baltimore, RoRo cargoes such as the Shipment were stowed and carried on deck, Ahmed Decl. ¶¶ 7, 24–26. Plaintiff, in opposition, cites *Blasser Bros., Inc. v. N. Pan–Am. Line,* 628 F.2d 376, 384 n. 13 (5th Cir.1980), and argues that Maraschin's testimony and Ahmed's declaration cannot be credited because they are NSCSA employees, Plaintiff is mistaken, The Court does not read the *Blasser* footnote as stating that employee testimony must always be discounted, but rather that, under the circumstances in *Blasser,* the particular employee's testimony was insufficient to establish a custom. *See id.* Other courts have routinely accepted the testimony of party employees, including as it relates to port custom and practice, *See, e.g., O'Connell Mach. Co. v. M.V. Americana,* 797 F.2d 1130, 1135–36 (2d Cir.1986); *Konica Bus. Machs., Inc. v. Vessel Sea–Land Consumer,* 153 F.3d 1076, 1078 (9th Cir.1998); *Alt. Glass,* 1999 WL 2870, at *1.

NSCSA also submits the declaration of Praharaj, who states that it is the regular practice in the port of Baltimore for RoRo vessels such as the SAUDI HOFUF to carry RoRo cargo on deck. Praharaj Decl. ¶¶ 6–16. Although EAS has not moved to strike Praharaj's declaration, EAS asks the Court to disregard this evidence on the ground that Praharaj was not properly disclosed as an expert witness, citing *Coregis Ins. Co. v. Lewis, Johs, Avallone, Aviles & Kaufman, LLP,* 01 Civ. 3844, 2006 WL 2135782, at *8–9 (E.D.N.Y. July 28, 2006) (granting a motion to strike where the defendant failed to disclose expert as required under Rule 26(a) and the discovery scheduling order set by the court), Pl. Mem. 12, EAS also requests that, "[t]o the extent the Court is willing to consider the Praharaj Declaration," EAS should be given an opportunity to depose Praharaj and submit a rebuttal report, *Id.* Despite EAS's failure to bring a motion to strike, the Court has an independent responsibility to serve as the gatekeeper for expert testimony and to rely only on competent, admissible evidence in ruling on a motion for summary judgment, *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997). Under Rule 26, a party must "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705," and must make such disclosures "at the times and in the sequence that the court orders," Fed.R.Civ.P. 26(a)(2)(A), (D).

EAS's objection that Praharaj was not properly disclosed as an expert has no merit. EAS does not appear to contest the sufficiency of the information contained in the Praharaj declaration, and the Court finds that the declaration contains an adequate summary of Praharaj's expertise and qualifications and that his statements are based on specialized knowledge not possessed by an ordinary lay witness

and likely to assist the finder of fact, *See Nimely v. City of New York,* 414 F.3d 381, 395–97 (2d Cir.2005), Moreover, the timing of NSCSA's disclosure is not a bar to admissibility. Unlike in *Coregis,* EAS was not prejudiced or otherwise harmed, as NSCSA had made clear its intention to proffer expert discovery and submitted the Praharaj declaration prior to the December 1, 2013 discovery deadline agreed upon by the parties, ECF No, 14, and set out in this Court's order, ECF No. 15. *Cf. Coregis,* 2006 WL 2135782, at *9 (finding prejudice where the defendant did not comply with the governing scheduling order); *DVL, Inc. v. Gen. Elec. Co.,* 811 F.Supp.2d 579, 591 (N.D.N.Y.2010) (finding prejudice where expert was not disclosed and declaration was provided after close of discovery), *aff'd sub nom. DVL, Inc. v. Niagara Mohawk Power Corp.,* 490 Fed.Appx. 378 (2d Cir.2012). EAS had sufficient opportunity to request a deposition, submit a rebuttal declaration, or request additional time for such discovery, but it failed to do so at any time prior to submitting its summary judgment opposition papers, Accordingly, Praharaj's declaration need not be precluded.

■ EAS submits no evidence that rebuts NSCSA's showing that custom allows for on-deck stowage under the circumstances here, The sole evidence proffered by EAS on this point is Ross' affirmation, which states that he lacks any knowledge that other shipments of P–IV Mobile Aircraft Arresting Systems were stowed on deck and identifies one subsequent shipment in which such cargo was stowed below deck, Ross Affirm. ¶¶ 1, 5. Leaving aside that EAS's submission of this affirmation undercuts its argument that party employees should not be credited, the Ross affirmation does not squarely address whether custom or practice permits the on-deck stowage of RoRo cargoes such as

the Shipment on RoRo vessels, *Id.* ¶ 5. At most, the Ross affirmation indicates that such cargo has, on occasion, been stowed below deck. This is not sufficient to raise a genuine dispute as to a material fact. Nowhere does NSCSA contend that such cargo could not also be stowed below deck; rather, NSCSA submits evidence that custom *allowed for* on-deck stowage of RoRo cargo, such as the Shipment. Nor does the Ross affirmation support EAS's claim that "none of the other hundreds of shipments of the Trailers loaded in the ports of Baltimore and New York had been carried on-deck." Pl. Mem. 12.

In sum, the evidence submitted by NSCSA is sufficient to establish that it was customary, both in the port of Baltimore and in NSCSA's prior practices, for RoRo cargo such as the Shipment to be stored on deck on RoRo vessels such as the SAUDI HOFUF, Contrary to EAS's contention that NSCSA's evidence pertains only to RoRo cargoes generally and says nothing about the particular trailers comprising the Shipment here, *see* Pl. Mem. 10–11, the evidence cited above makes explicit, repeated references to port custom with respect to RoRo cargo "such as the Shipment" or "similar to the Shipment" on the specific type of RoRo ship at issue here. *See, e.g.,* Maraschin Tr. 19:19–23:5; Ahmed Decl. ¶¶ 18, 26, 28. NSCSA has met its burden of demonstrating a custom and practice allowing for on-deck stowage for the particular cargo at issue. *Cf. English Elec.,* 814 F.2d at 89 (affirming holding that there was no deviation, noting that "[t]he district court's conclusions—that on-deck stowage was the custom and practice, both in the industry and as between this shipper and carrier, and that an implied agreement contemplated on-deck stowage—are squarely grounded in findings of fact."). Accordingly, NSCSA's conduct was not a deviation from the Bill of Lading.

### B. On–Deck Stowage Was Not Unreasonable

Moreover, even if on-deck stowage were a contractual deviation, it would not have been an unreasonable one, *See Am. Home Assurance Co. v. M/V TABUK,* 170 F.Supp.2d 431, 433–34 (S.D.N.Y.2001), *aff'd,* 45 Fed.Appx. 12 (2d Cir.2002). A carrier will not be deprived of limitations on liability based on a deviation unless it is shown that the deviation was unreasonable. *Gen. Elec. Co. Int'l Sales Div. v. S.S. Nancy Lykes,* 706 F.2d 80, 87 (2d Cir.1983). A deviation is unreasonable where, "in the absence of significant countervailing factors, the deviation substantially increases the exposure of cargo to foreseeable dangers that would have been avoided had no deviation occurred," *SNC S.L.B. v. M/V Newark Bay,* 111 F.3d 243, 248 (2d Cir.1997). However, " 'mere negligence, lack of due diligence, or a failure to properly handle, stow, care, or deliver cargo, never has constituted deviation,' " *Am. Home,* 45 Fed.Appx. at 14 (quoting *Sedco,* 800 F.2d at 32). The evidence here does not demonstrate that NSCSA was unreasonable or substantially increased the risk of danger to the Shipment by stowing it in the same manner as other RoRo cargo. The parties agree that OPT did not inform NSCSA that the Shipment needed to be stowed below deck, Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.[4] This weighs against any finding of unreasonableness, *See O'Connell,* 797 F.2d at 1136 (holding that a plaintiff may not recover for cargo damage resulting from

---

4. The statement in Ross' affirmation that EAS requested below-deck stowage is misleading and not supported by the attached document. Ross Affirm. ¶ 5. This request for below-deck stowage was made by EAS to OPT, Ross Affirm. Ex, 1, ECF No, 29–1 at 5, but was not communicated to NSCSA, as EAS admits in its Rule 56.1 submission, Def., 56.1 ¶ 11; Pl. 56.1 ¶ 11. If anything, the fact that EAS felt a need to communicate this instruction to OPT suggests that EAS was aware that on-deck

on-deck stowage where the plaintiff "failed to alert [the defendant carrier] to any special stowage needs").

Furthermore, the Second Circuit has observed that "technological innovation and vessel design may justify stowage other than below deck" and held that on-deck stowage of a container on a specially designed container ship constituted a reasonable deviation, *Du Pont de Nemours Int'l S.A. v. S.S. Mormacvega*, 493 F.2d 97, 102 (2d Cir.1974) (collecting cases); *see also English Elec.*, 814 F.2d at 89. Other courts have similarly recognized that on-deck stowage on ships specially designed for such stowage is reasonable. *See, e.g., Konica*, 153 F.3d at 1078; *Alt. Glass*, 1999 WL 2870, at *5; *Ins. Co. of N. Am. v. Blue Star (N. Am.), Ltd.*, 95 Civ. 9499, 1997 WL 345235, at *5–8 (S.D.N.Y., June 20, 1997), As discussed above, NSCSA has submitted ample evidence that the SAUDI HOFUF, a specially designed RoRo vessel, was capable of and routinely did carry RoRo cargo such as the Shipment on deck, In light of these factors, there is no basis to conclude that NSCSA substantially increased the risk of a foreseeable danger or otherwise acted unreasonably in electing to stow the Shipment on deck.

### CONCLUSION

Given the absence of a genuine dispute as to any material fact, summary judgment limiting NSCSA's liability to $500 per package (for a total of $3,000) is appropriate. Accordingly, Defendant's motion for partial summary judgment is GRANTED.

The Clerk of Court is directed to terminate the motion at ECF No. 18.

SO ORDERED.

stowage was possible under the circumstances.